324 P.2d 398

W. B. KENT, Plaintiff-Respondent,

v.

Frank S. CAMPBELL, doing business as F.
S. Campbell Company, Defendant-
Appellant.

Newell J. DOCKSTADER, Plaintiff-
Respondent,

v.

Frank S. CAMPBELL, doing business as F.
S. Campbell Company, Defendant-
Appellant.

No. 8609.

Supreme Court of Idaho.

April 17, 1958.

---

Nielson & Nielson, Burley, for appellant.

William T. Goodman, Rupert, for W. B. Kent. H. V. Creason, Creason & Creason, Rupert, for respondent, Newell J. Dockstader.

SMITH, Justice.

These actions, by stipulation of the parties, were consolidated for purposes of trial.

Each respondent commenced action against appellant seeking recovery of the agreed price of seed beans produced during the 1955 farming season under a written crop contract with appellant. The contracts are identical in form differing only as to the acreage and variety of beans produced. Trial by jury resulted in a verdict of $2,651.40 for respondent Kent, and $2,109 for respondent Dockstader. Appellant perfected an appeal from each judgment entered pursuant to verdict.

Certain portions of the crop contracts read as follows:

"The Company agrees to furnish the Grower with the stock seed for such purpose in the amount aforesaid, the title to such stock seed and to the seed crop produced therefrom to be and remain at all times in the Company except as otherwise stated.

" * * * The receipt of the crop by the Company shall not constitute acceptance thereof hereunder.

\* \* \* \* \* \*

"It is agreed that the Company shall, after delivery to it of such crop, examine and test the same to determine whether it is merchantable seed and of satisfactory germination, and the Company's decision thereof shall be conclusive as to whether the crop shall be accepted or not. The Company shall after such determination, notify the Grower of the result thereof.

\* \* \* \* \* \*

"If the crop is accepted by the Company, the amount of merchantable seed thereof shall be determined by deducting from the amount delivered by the Grower such percentage as, in the judgment of the Company after examination, shall equal the amount of culls, unmerchantable seeds, splits, dirt and other foreign material contained therein. There shall then be deducted the amount of stock seed furnished the Grower by the Company hereunder, and the purchase price for the remainder at the rate per pound aforesaid shall then be forthwith payable. * * *.

"In case the crop is not accepted by the Company, the title thereto shall forthwith thereupon vest in the Grower, whether in his possession or not, and if in the Company's possession, it shall thereupon be subject to the Grower's disposition at his risk."

The "Company", in such portions of the crop contracts, refers to appellant and the "Grower" to respondents.

Appellant's defenses against respondents' complaints essentially are:

That the beans tested less than appellant's required standard of 85% germination, which rendered them unmarketable, and that some quantity of Dockstader's beans were discolored, and that appellant so notified respondents. Appellant then alleges that after it rejected the Kent beans because they were unmerchantable,

"that the plaintiff and defendant [appellant and respondent Kent] then, on or about December 1, 1955 * * * entered into an oral agreement wherein the plaintiff requested the defendant to handle the beans of plaintiff at the plaintiff's risk; that thereafter, in carrying out the oral agreement, the defendant endeavored to sell plaintiff's beans on a dockage basis and as substandard beans * * * under the

custom of the bean industry * * * to reduce the volume 2% for each point the germination is under the 85% that is acceptable to the seed industry."

Then follows appellant's admission that he paid $1,500 on account of the Kent beans, and its offer to pay respondent Kent for the balance on a dockage basis, which Kent refused. Appellant alleges, with reference to the Dockstader beans, that after he had advised respondent Dockstader of the unmerchantability of his beans,

> "the plaintiff [respondent Dockstader] requested the defendant to see what could be done in the blending of plaintiff's beans with other beans and requested the defendant to attempt to dispose of the beans so blended at the risk of plaintiff."

Appellant then alleges his attempts to market the Dockstader beans as blended and amount remaining on hand.

Essentially respondents' actions are for accountings in accordance with the terms of contracts of completed bailments, with title to the beans reposing in appellant bailor, with redelivery of the beans to respondents, bailees, and vesting of title in them, allegedly rendered impossible by the appellant bailor's acts of acceptance of the beans.

Appellant defended on the theory of executory oral buy and sell consignment contracts allegedly entered into upon appellant bailor's nonacceptance of the beans, title thereupon vesting in respondents bailees.

█ Appellant assigns the error, that the verdicts are contrary to the evidence in that the evidence shows that the crop contracts were bailments and not executory buy and sell contracts. Appellant contends, "this bailment continued and was in force when the actions were commenced."

The crop contracts as drafted recognize the theory of bailment. The growers, respondents, recognized title to the beans to be in appellant, bailor; and respondents, bailees, fulfilled the requirement of the bailment by their delivery of the beans to appellant with title thereto reposing in appellant, bailor. Thereupon the bailments terminated, for then, as stated in the conversion action of D. M. Ferry & Co. v. Forquer, 61 Mont. 336, 202 P. 193, 195, 29 A.L.R. 642,

> "* * * the preponderant authority and better reasoning support the rule that upon the termination of the bailment, the identical thing bailed, or the product of or substitute for that thing, together with the increments, earnings and gains which may have accrued to it during the period of the bailment, must be re-delivered, delivered over, or accounted for by the bailee in accordance with the terms of the contract."

In the case here, title to the beans reposed in appellant unless and until within a rea-

sonable time he should see fit to reject them by nonacceptance for any cause stated in the crop contracts. The question is thus presented, whether the evidence shows that appellant rendered impossible the rejection and nonacceptance of the beans by rendering impossible their redelivery in entirety to respondents, bailees.

Respondent Dockstader delivered the beans grown under his contract to appellant during September, and Kent made delivery during the first week in October, 1955.

During December, 1955, appellant shipped some of the Dockstader beans, which was at a time prior to attempted rejection of those beans "after the first of the year" of 1956.

Appellant made two payments on the account of Kent's beans, i. e., $1,000 on October 8, 1955, and $500 on December 4, 1956, and shipped some of those beans. It was "along the last of the year" 1955 that the germination tests were discussed. Respondent's testimony on cross-examination appears:

"A. He showed me some tests, yes.

"Q. And that were less than this 85% germination? A. Those he showed me were less, yes.

"Q. And he told you that was the reason that he couldn't pay you the ten cents, was it not? A. He said that's the reason he was slow paying.

He said he was going to blend them in, and he says, 'I am going to pay you in full and you won't be out a thing.'

"Q. He said he was going to pay you in full? A. Yes. He says, 'You are not going to be out a thing.' He said, 'I am going to pay for the beans like I agreed.'"

The aforesaid evidence indicates appellant's acceptance of the beans delivered, in each instance as of a time prior to appellant's attempted rejection. Such evidence shows appellant's acts of partial payment for the Kent beans, blending of the Dockstader beans, and shipments made of the beans grown and delivered by both respondents, prior to the time of any asserted rejection; all such acts rendered it impossible for appellant to redeliver to each respondent the beans that each had grown and delivered.

Those acts of appellant were consistent with the terms of the crop contracts, that title to the seed crop produced be and remain in appellant; and were inconsistent with any theory of retention of title and ownership of the seed crops in respondents; nor do the contracts provide for acceptance in part and rejection in part by appellant of the bean crops.

In Gross Mfg. Co. v. Redfield, 48 Idaho 399, 282 P. 487, 488, this Court quoting from Babcock v. Hutchinson, 4 Lans. (N.Y) 276, stated:

" ' * * * They could not undertake to appropriate to their own use a part of the property, and reject the residue. The plaintiffs had given them no such option.' "

And continuing, this Court ruled:

" * * * and by acceptance of the shipment and retention of a considerable part thereof respondent must be held to an acceptance of the whole." See also: Tweedie Footwear Corp. v. Roberts-Schofield Co., 48 Idaho 777, 285 P. 476.

Appellant's aforesaid assignment is without merit. The evidence sustains respondents' theory that the bailments became completed with the duty resting on appellant to account to respondents in accordance with the terms of the completed crop contracts.

Appellant's assignments that the verdicts are contrary to the evidence because the evidence shows that the beans delivered were not of sufficient germination to be merchantable, and that appellant could not dispose of more of the seed beans than he offered to pay for, become nugatory in the light of appellant's acts hereinbefore pointed out, indicating appellant's acceptance of the beans, shipments made, partial payments and blending, as of a time prior to any attempted rejection, all such acts being consistent with title to the beans reposing in appellant pursuant to the terms of the crop contracts.

Next appellant assigns error of the trial court in entering judgments on the verdicts because the court tried the cases under the theory that the crop contracts were executory sales contracts and not bailments. Appellant's assignments of error relating to certain jury instructions given and refused, raise the same question.

We have pointed to appellant's pleaded defenses of oral consignment agreements allegedly made upon appellant bailor's alleged nonacceptance of the beans. Further, appellant through his counsel's opening statement, placed the theory of the supplemental oral consignment agreements before the jury; also, after each respondent moved for directed verdict, the court in denying the motions remarked on the theory of appellant's defenses, recognizing the jury question, in the following language:

"The Court: There still is the question of evidence for the jury to determine whether or not there was a subsequent mutual oral agreement among the parties as to the disposition of these beans and for that reason I am going to deny the motions for directed verdict in each of the cases."

The evidence is disputed as to whether such oral consignment agreements were entered into, appellant affirming and respondents denying that they were. Appellant in his brief recognizes the dispute in the evidence concerning the oral agreements.

Not only did the trial court allow appellant to adduce evidence relative to the oral consignment agreements, but the jury instructions, the giving of which appellant assigns as error, fully and fairly covered the subject matter, and left it to the jury to find whether any such agreements had been entered into, the verdict to be governed accordingly. Consequently, there is no merit in appellant's last mentioned assignments of error.

■ Appellant must be held to the theory which he advanced in the trial court; he cannot be allowed·to depart therefrom on appeal. Ivie v. W. G. Jenkins & Co., 53 Idaho 643, 650, 26 P.2d 794; Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686.

■ The verdict is supported by substantial, though conflicting evidence. "* * * whenever there is substantial evidence to support a verdict the same shall not be set aside." I.C. sec. 13–219; Chapman v. Booth, 71 Idaho 359, 232 P.2d 668; Zenier v. Spokane International R. Co., 78 Idaho 196, 300 P.2d 494; Montgomery Ward & Co. v. V–1 Oil Co., 78 Idaho 280, 301 P.2d 1106.

The judgments of the district court in the two cases, consolidated for purposes of trial, and disposition on appeal, are affirmed. Costs to respondents.

KEETON, C. J., and PORTER, TAYLOR and McQUADE, JJ., concur.