510 P.2d 1091

**TAPPER CHEVROLET COMPANY, an Idaho corporation, and Lyle G. Tapper, Jr., Plaintiffs-Respondents,**

v.

**Khalil V. HANSEN et al., Defendants-Appellants.**

No. 11146.

Supreme Court of Idaho.

June 7, 1973.

Terrell, Green, Service & Gasser, James B. Green, Pocatello, for defendants-appellants.

LaMont Jones, Jones, Pomeroy & Jones, Pocatello, for plaintiffs-respondents.

DONALDSON, Chief Justice.

This is an action for specific performance of a real estate sales contract; the defendants-appellants appeal from the district court's entry of summary judgment in favor of the plaintiffs-respondents.

The contract in question was entered into on April 21, 1964, by appellants Khalil V. Hansen, Faye W. Hansen, and Hansen Chevrolet Company—as sellers—and respondent Tapper Chevrolet Company—as buyer. Among its provisions were the following paragraphs.

"(NO REPRESENTATIONS) It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this Agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representation not embodied in this Agreement, made by the other.

\* \* \* \* \* \*

"(MODIFICATION OR TERMINATION; BINDING EFFECT) It is hereby understood and agreed that this Agreement may not be changed or terminated orally \* \* \*.

\* \* \* \* \* \*

"(CONDEMNATION) In the event of the construction of an overpass upon, over and across the railroad tracks on the west end of Washington Street, Montpelier, Idaho, the Sellers covenant, promise and agree to adjust, that is, by decreasing and reducing, the purchase price of this Agreement, by subtracting from said purchase price an amount of not less than Forty-thousand and no/100 Dollars ($40,000.00). By making this adjustment in the purchase price in the event of said construction of an overpass, the Sellers realize and understand that the property hereby sold to the Purchaser will depreciate in value, and in the event of said construction of overpass, the Sellers covenant and agree to compensate the Purchaser for the said depreciation in value of the property as a result of the construction of said overpass. In the event any monetary award for condemnation of the property described in this Agreement is made to the Sellers, the Sellers agree that if the condemnation award received is greater than $40,000.00, then the Sellers will divide equally that amount of the condemnation award over and above $40,000.00 with the Purchaser."

This agreement was prepared by the sellers' attorney, at their request, from information furnished by them. In an affidavit filed in support of summary judgment, the attorney who drew up this document stated that "there was no overreaching, inequitable or unconscionable conduct on the part of any of the parties to said agreement and at the time of execution it embodied the

**438**

mutual understanding of the parties and their attorneys."

After the execution of the contract of sale, Tapper Chevrolet's president Lyle G. Tapper, Jr. (who signed for the buyer) actively supported the selection of the Washington Street site for the proposed overpass; and Khalil V. Hansen (one of the sellers) worked as diligently to cause the overpass to be located elsewhere.

When this action was commenced by the buyer on August 11, 1971, an overpass had been constructed at the Washington Street location, and the balance outstanding under the contract had been reduced to $40,000, the amount of the reduction provided for in the event of the construction of said overpass. Asserting fulfillment of the contractual condition to the $40,000 reduction provided for, the buyer demanded delivery of the deed to the property.

In their answer, the sellers raised the defense of "unclean hands"—relying upon the buyer's efforts to procure selection of the Washington Street overpass location— and the defense of mutual mistake of fact —alleging that although the parties had contemplated that the overpass would result in a depreciation of the property's value, in actuality it had resulted in its appreciation since the time of sale. The buyer moved for summary judgment, and in a supporting affidavit Lyle G. Tapper stated, and offered exhibits to show, that when the sales agreement was entered into on April 21, 1964, the construction of the overpass had already been approved by both the state and the city. In an affidavit in opposition to summary judgment, Khalil V. Hansen stated (1) that during oral discussions concerning the sale of the property, the parties *orally agreed* that they would mutually oppose the construction of such overpass; (2) that at the time of the agreement, the Washington Street overpass was "in the planning stage only"; (3) that in agreeing to the "condemnation" provision, the parties did not contemplate that the buyer would work to procure the con-

struction of the overpass at that location but rather that both parties would cooperate in seeking "to have the location *moved*" (emphasis added); (4) that (upon advice and belief) the overpass as finally constructed differed substantially in design from that proposed prior to the execution of the contract; (5) that (upon information and belief) the construction of the overpass did not result in depreciation of the property by the sum of $40,000; and (6) that specific performance, if granted, would cause him to suffer "an oppressive and harsh loss in excess of and beyond the contemplation of the parties at the time the agreement was entered into." In its memorandum decision granting the relief requested by the buyer, the trial court concluded, inter alia:

"The parties to this agreement made the same with full knowledge of the overpass and attempted between them to resolve the problem. Undoubtedly this was the inducement for [the buyer] to enter the contract and [the seller] realized this.

\* \* \* \* \* \*

"[T]here is nothing in the contract requiring a standard of conduct by either party and each one acted in a way he chose, which action did not violate the contract between them."

In appealing from the summary judgment entered by the district court, the sellers in essence contend that the following factual issues remain to be resolved by trial: (1) estoppel; (2) oppressive, unconscionable and inequitable conduct; (3) harsh and oppressive results; (4) mutual mistake; and (5) fraud.

In alleging the existence of the first two enumerated issues, the appellants rely upon actions taken by the buyer calculated to obtain or retain the Washington Street location for the proposed overpass. These actions are alleged to have been contrary to a prior oral agreement that the parties would mutually oppose the construction of the overpass at that location. The buyer's

actions are also alleged to have been violative of the parties' understanding, at the time the condemnation provision was entered into, that both of them would cooperate in seeking "to have the location moved" from the proposed Washington Street site.

Where an agreement is reduced to writing in such terms as to express a complete, integrated contract, evidence of a prior or contemporaneous oral agreement relating to the same subject matter is inadmissible to vary, contradict, or enlarge the terms of the written contract. Nysingh v. Warren, 94 Idaho 384, 488 P.2d 355 (1971); Utah Constr. Co. v. McIlwee, 45 Idaho 707, 266 P. 1094 (1928); Beebe v. Pioneer Bank & Trust Co., 34 Idaho 385, 201 P. 717 (1921); 4 Williston on Contracts, Third Edition § 631 (1961). Where preliminary negotiations culminate in an integrated written agreement, the writing supersedes all previous understandings. Nysingh v. Warren, *supra*; Nuquist v. Bauscher, 71 Idaho 89, 227 P.2d 83 (1951).

In the case at bar, the integrated character of the parties' written contract is established by its "merger" provision, which specifically provides that "all understandings and agreements heretofore had * * * are merged in this Agreement, * * * neither party relying upon any statement or representation not embodied in this agreement, made by the other." The alleged prior agreement and understanding would impose upon the buyer the obligation to work for a relocation of the proposed Washington Street overpass. The prior understanding and oral agreement are asserted for the purpose of enlarging the buyer's obligations as set forth in the integrated written contract; therefore, evidence of such a prior understanding or oral agreement is inadmissible. Since affidavits in support of or in opposition to summary judgment must "set forth such facts as would be admissible in evidence," these allegations of a prior agreement and understanding are insufficient to raise a genuine issue of material fact. I. R.C.P. 56(e).

The alleged existence of issues relating to mutual mistake and to inequitable results is grounded upon the following averments of the sellers' affidavit: (1) that (upon advice and belief) the overpass as finally constructed differed substantially in design from that proposed prior to the execution of the contract; (2) that (upon information and belief) the construction of the overpass did not result in depreciation of the property by the sum of $40,000; and (3) that specific performance, if granted, would cause "an oppressive and harsh loss in excess of and beyond the contemplation of the parties at the time the agreement was entered into." This last allegation is nothing more than an assertion of what the affiant hopes will be shown at trial and, as such, is insufficient to create a genuine issue under I.R.C.P. 56. Tri-State Nat'l Bank v. Western Gateway Storage Co., 92 Idaho 543, 447 P.2d 409 (1968); I. R.C.P. 56(e). The other two averments, made upon advice and belief and information and belief, are also inadequate under I.R.C.P. 56(e), which requires that affidavits be made "on personal knowledge." Giles v. Montgomery Ward Co., 94 Idaho 484, 491 P.2d 1256 (1971); Tri-State Nat'l Bank v. Western Gateway Storage Co., *supra;* see Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 831, 70 S.Ct. 894, 94 L.Ed. 1312 (1950) (decided under Fed.R.Civ.P. 56(e)), overruled on other grounds, Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). On a summary judgment motion, statements made "on information and belief" cannot be utilized but rather will be disregarded. 10 Wright & Miller, Federal Practice & Procedure 695–696 (1973); 6 Moore's Federal Practice 2806 (2d ed. 1972).

Having examined the record, we conclude that the district court correctly determined that there was no genuine issue of

fraud. The only evidence in the record on the subject appears to be the uncontroverted statement of the appellants' 1964 attorney, who drew up the contract, that "at the time of execution it embodied the mutual understanding of the parties and their attorneys."

The district court did not err in granting the respondents' motion for summary judgment, since upon the record before it, no genuine issue of material fact remained unresolved. I.R.C.P. 56(c).

Judgment affirmed. Costs to respondents.

SHEPARD, McQUADE, McFADDEN, and BAKES, JJ., concur.