624 P.2d 408

John CHAPMAN and David Chapman, Plaintiffs-Respondents and Cross-Appellants,

v.

HANEY SEED CO., INC., an Idaho Corporation, Defendant-Appellant and Cross-Respondent.

No. 13353.

Supreme Court of Idaho.

March 2, 1981.

Lloyd J. Webb and Riley Burton of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for defendant-appellant and cross-respondent.

Gerald L. Weston, of Gigray, Miller, Downen & Weston, Caldwell, for plaintiffs-respondents and cross-appellants.

SHEPARD, Justice.

This is an appeal from a judgment in favor of plaintiffs-respondents Chapmans against defendant-appellant Haney Seed Co. The action originated out of a contract wherein the Chapmans, who were farmers, agreed to grow a crop of peas for a commodity warehouse, Haney Seed Co. We affirm.

In March 1977, the Chapmans entered into a contract with Haney Seed Co., the major portion of which consisted of a printed form document tendered by Haney. The contract provided that the Chapmans would grow a crop of Alaska peas on 35 acres of land from seed provided by Haney. That contract provided in part: "The stock seed and the entire seed crop produced from it is, and shall remain at all times covered by this agreement the sole property of the Seedsman, except as otherwise expressly provided for in this agreement." The contract also required the Chapmans to

" * * * deliver the entire seed crop or product of such plantings, and in such manner as to secure the greatest return of seed suitable for seedsmen's use, to the Seedsman at its warehouse in Twin Falls, Idaho, as soon as such can be put in suitable condition, but not later than Sept. 1, 1977."

Haney is identified in the contract as the "Seedsman."

It is not disputed that the Chapmans did receive the seed from Haney, did plant, cultivate and harvest a crop of peas, and there is no dispute regarding the character or quality of the Chapmans' farm operation or of the pea crop or that the Chapmans did timely deliver the crop to Haney.

The sole dispute between the parties is whether Haney was obligated under the contract to accept delivery of the entire crop from the Chapmans, and, if so, what price was to be paid therefor. That dispute centers on the following handwritten provisions which were inserted in the printed contract form on a number of blank lines contained therein:

| "VARIETY | NUMBER OF PEAS | PRICE PER POUND |
|---|---|---|
| Alaska Peas | 35 | |
| 40% of crop at 8.25¢ | | |
| 60% of crop open market" | | |

Both parties agree that Haney was obligated to accept 40% of the crop and pay 8.25¢ of the crop and pay 8.25¢ per pound therefor. As to the balance of the crop, the Chapmans contend that the phrase "open market" related only to the price for which Haney was obligated, i. e., at the then prevailing market price. Haney contends that the phrase "open market" somehow related to the title of 60% of the pea crop and should be interpreted to mean that the

Chapmans retained title to 60% of the crop and could dispose of it to any buyer on the open market.

The cause was tried to the court and thereafter the court concluded that the parties had entered into a contract for the production of commercial peas by the plaintiff, which contract was evidenced by a written memorandum entirely prepared and furnished by Haney; that the written contract provided that the crop produced was the property of Haney, except as otherwise *expressly* provided for; that Haney agreed to pay in full for the services of the grower under the contract upon receipt and acceptance at the price specified; that the entire crop was in fact delivered; that as to 60% of the crop Haney was obligated to pay for those peas at the then prevailing market price [which the court specifically found] and that the Chapmans were entitled to judgment therefor against Haney in the amount of $9,883.75.

On appeal, it is Haney's principal argument that the trial court erred in excluding parol and trade usage evidence relating to title of the disputed 60% of the pea crop. The Chapmans cross-appeal on the basis that the trial court erred in failing to grant attorney fees.

It is the general rule that when a contract has been reduced to writing, which the parties intend to be a complete statement of their agreement, any other written or oral agreements or understandings (referred to in many cases as extrinsic evidence) made prior to or contemporaneously with the written "contract" and which relate to the same subject matter are not admissible to vary, contradict or enlarge the terms of the written contract. *Tapper Chevrolet Co. v. Hansen,* 95 Idaho 436, 510 P.2d 1091 (1973); *Rogers v. Hendrix,* 92 Idaho 141, 438 P.2d 653 (1968); *Green v. K.S. Webster & Sons,* 77 Idaho 281, 291 P.2d 864 (1955); *Paurley v. Harris,* 75 Idaho 112, 268 P.2d 351 (1954); *Williams v. Idaho Potato Starch Co.,* 73 Idaho 13, 245 P.2d 1045 (1952); *Stone v. Bradshaw,* 64 Idaho 152, 128 P.2d 844 (1942); *Beebe v. Pioneer Bank & Trust Co.,* 34 Idaho 385, 201 P. 717 (1921);

32A C.J.S. *Evidence* § 959(1)a (1964). *See, Green v. Consolidated Wagon Etc. Co.,* 30 Idaho 359, 164 P. 1016 (1917).

However, it has also been consistently held that extrinsic evidence is admissible to interpret ambiguous or uncertain terms which are contained in the written contract. *Rogers v. Hendrix, supra; Williams v. Idaho Potato Starch Co., supra; Durant v. Snyder,* 65 Idaho 678, 151 P.2d 776 (1944); *Stone v. Bradshaw, supra; Fullmer v. Proctor,* 59 Idaho 455, 82 P.2d 1103 (1938); *McDougall v. Servel,* 50 Idaho 9, 292 P. 590 (1930); *Green v. Consolidated Wagon, Etc. Company, supra.* Accord, *Bonner County v. Panhandle Rodeo Association, Inc.,* 101 Idaho 772, 620 P.2d 1102 (1980); *Werry v. Phillips Petroleum Co.,* 97 Idaho 130, 540 P.2d 792 (1975).

■ Here Haney contends that the term "open market" is ambiguous not only as to price but also as to the title to 60% of the crop, notwithstanding that such contention directly contradicts an explicit and unambiguous provision of the written contract document, and therefore that extrinsic evidence is admissible as to both price and title. We do not agree. We further conclude that the case law advanced by Haney does not support its contention. In *Rogers v. Hendrix,* 92 Idaho at 146–147, 438 P.2d at 658–59, this Court said that extrinsic evidence would have been properly admitted to explain an ambiguity in the listing agreement, but that it was erroneously admitted by the trial court when in direct conflict with the written listing agreement. The court went on to note that although such was error, it was harmless error under the particular circumstances. Other cases support the trial court's interpretation of the parol evidence rule here. *See Ness v. Greater Arizona Realty, Inc.,* 117 Ariz. 357, 572 P.2d 1195 (1977); *Arrington v. Walter E. Heller International Corp.,* 30 Ill.App.3d 631, 333 N.E.2d 50 (1975); *Robertson v. McCune,* 205 Kan. 696, 472 P.2d 215 (1970); 32A C.J.S. *Evidence* § 959(1)a (1964). *See also Ace Supply, Inc. v. Rocky-Mountain Machinery Co.,* 96 Idaho 183, 525 P.2d 965 (1974); *Commercial Insurance Co. v. Hart-*

*well Excavation Co.*, 89 Idaho 531, 407 P.2d 312 (1965); *Williams v. Idaho Potato Starch Co., supra; Stone v. Bradshaw, supra; McDougall v. Servel, supra.*

■ On appeal, Haney argues that the printed form contract provisions relating to title to the crop should not be read literally since the printed form referred to "seed" crops and it is undisputed that the Chapmans were growing commercial peas. We note, however, that Haney does not make any such argument relating to the title of 40% of the crop and that the record discloses that the same printed form "seed growing contract" was utilized by Haney in contracting with approximately 60 other farmers in the area who also grew commercial pea crops under the identical contract. The record and the arguments on appeal are silent as to how Haney, if at all, contracts differently as to commercial versus seed pea crops.

■ Finally, we note that the printed form contract was prepared and provided by Haney and the so-called ambiguous handwritten provisions were added thereto by the field representative of Haney. Therefore, the provisions of that contract must be construed most strongly against Haney. *E. g., Werry v. Phillips, supra; Dale's Service Co., Inc. v. Jones*, 96 Idaho 662, 534 P.2d 1102 (1975); *Stone v. Bradshaw, supra.*

Lastly, we recognize that the contract at issue here is the same type as in *Kent v. Campbell*, 80 Idaho 57, 342 P.2d 398 (1958), and therein denominated as a contract in bailment. *Kent* has been seriously criticized in later cases. *See Peterson v. Conida Warehouses, Inc.*, 98 Idaho 883, 575 P.2d 481 (1978). The case at bar involving no alleged intervening rights of third parties, but being exclusively one between the contracting parties, we find no necessity to address herein the question of "bailment."

■ We have examined the remaining contentions of the parties, including the failure to award attorney fees, and find the same to be without merit. The judgment of the trial court is affirmed. Costs to respondents.

McFADDEN, BISTLINE and DONALDSON, JJ., concur.

BAKES, Chief Justice, dissenting:

I have no quarrel with the majority's restatement of the parol evidence rule. Extrinsic evidence is generally not admissible to vary, contradict or enlarge the terms of a written contract.[1] However, where the contract contains ambiguous terms the rule has always been that parol evidence was admissible, not to contradict, but to explain the terms of the agreement. *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975).

In this case, parol evidence was offered to explain an ambiguity. The phrase "60% of crop at open market" is patently ambiguous. The majority implicitly recognizes as much; nowhere is it stated that the phrase is not ambiguous. Indeed, if it were, much of the majority's subsequent analysis would have been unnecessary. Instead, it appears that the majority recognizes that extrinsic evidence is admissible to explain, but only to the extent that it does not get in the way of the court's view of other contract provisions. Hence, the majority somehow concludes that it, like the trial court, should resolve the ambiguity in accordance with its own interpretation of the contract, without permitting the defendant to explain the ambiguous phrase by parol evidence, while at the same time permitting the plaintiff Chapman to introduce parol evidence in support of his interpretation of the phrase.[2]

---

1. While the majority's statement of the common law parol evidence rule is accurate, it should probably be noted that the U.C.C.'s parol evidence rule for sales contracts is more liberal. I.C. § 28-2-202; *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979). The U.C.C. permits the addition of

consistent terms under certain circumstances. *Id.* Under either party's interpretation, the contract here in question was not a contract for sale. *See* I.C. § 28-2-106(1).

2. The trial court's exclusion of Haney Seed's extrinsic evidence is even more surprising in view of the fact that much of Chapman's parol

The parties' contract provided that "the entire seed crop . . . is, and shall remain at all times covered by this agreement the sole property of [Haney Seed], *except as otherwise expressly provided for in this agreement.*" (Emphasis added.) Although unstated, it is the above clause which the majority presumably finds to be in irreconcilable conflict with Haney Seed's interpretation of the term "open market." However, the proviso in the above clause contemplates that the parties may elsewhere in the agreement alter, in whole or in part, the title provisions of the printed form.

The question then becomes whether the handwritten phrase "60% of crop at open market" was intended to give the Chapmans title to 60% of the crop to be disposed of as they wished on the open market. If this interpretation were accepted, there would be no conflict in the contract; the provisions in question would be harmonized.

The legislature has recognized that form contracts are likely to contain language which does not always accurately reflect the intent of the parties.

"29–109. CONSTRUCTION OF CONFLICTING PROVISIONS.—Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form, and if the two are absolutely repugnant, the latter must be so far disregarded."

By emphasizing the printed form provisions of the contract, the majority has completely disregarded the literal language and intent of I.C. § 29–109. Haney Seed should have been permitted to introduce trade usage and other extrinsic evidence to assist the court in interpreting the handwritten "open market" language in a manner consistent with the true intent of the parties.

The majority neglects to discuss the case of *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975), although it is twice cited in the majority opinion. Werry and Phillips Petroleum Co. had entered into a lease agreement. The contract consisted of a printed form lease and three letters which had passed between the parties during negotiations. The issue was whether the contract required Phillips to install and maintain an operable heating system in the leased premises. The printed form contract gave Phillips wide (if not complete) discretion in constructing and maintaining improvements on the property. One of the letters, however, could be construed to require delivery of a functioning heating system.

The unanimous *Werry* Court held that the written letter created an ambiguity and that parol evidence was admissible to explain that ambiguity and determine the true intent of the parties (even though, as here, the proffered construction of the letter was seemingly in conflict with the contract's form language). The court then concluded that the written language of the letter controlled over the printed form language pursuant to I.C. § 29–109. Not only is *Werry* indistinguishable, it also makes good sense. The *Werry* holding places helpful and relevant evidence in front of the trier of fact.

I recognize that even if the trial court had admitted Haney Seed's parol evidence, it still might have ruled against Haney Seed. On appeal, this Court would have

---

testimony was similarly in apparent conflict with those printed provisions giving Haney Seed title to the growing crop. Chapman himself was unsure whether Haney Seed at all times retained title to the crop. At various points in his testimony, Chapman referred to the peas as "mine", stated that he really wasn't sure who owned the peas, and that ordinarily the crop would belong to him until paid for. It is clear that Chapman felt that Haney Seed was obligated to purchase the entire crop, but not that they necessarily retained title to it all along. Thus, assuming Haney Seed's version of the "open market" provision is in conflict with printed form language, then so is Chapman's.

upheld such a ruling since it would have been supported by competent, albeit conflicting, evidence. Nevertheless, my concern is for that future case in which a trial judge, perceiving a conflict between printed and written clauses, admits only that parol evidence which favors the trial judge's subjective interpretation of the printed provision; this in spite of the fact that the court might find the handwritten provision to be ambiguous. As a result, the jury will be permitted to hear only one side of the story, only one interpretation of an ambiguity which is by definition susceptible to differing interpretations.

I would reverse and remand for a new trial at which Haney Seed should be permitted to introduce extrinsic evidence both as to trade usage and Haney's understanding of the parties' intent when they employed the phrase "60% of crop at open market."