898 P.2d 61

Harold YOUNG and Hazel Young, husband and wife, Plaintiffs–Respondents–Cross–Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant–Cross–Respondent.

No. 20328.

Court of Appeals of Idaho.

Sept. 22, 1994.

Appeal Decided, see 127 Idaho 122, 898 P.2d 53.

Elam, Burke, P.A., Boise, and Reed McClure, Seattle, WA, for appellant. M. Allyn Dingel, Jr., Boise, and William R. Hickman, Seattle, WA, argued.

Park & Burkett, Boise, for respondents. W. Anthony Park, argued.

LANSING, Judge.

A jury determined that State Farm Mutual Automobile Insurance Company (State

Farm) breached an oral contract to provide underinsured motorist coverage, and was estopped from denying that coverage, to Harold and Hazel Young after they were injured in an automobile accident. State Farm appeals from the judgment entered on the verdict, alleging error in the district court's denial of State Farm's motion for a directed verdict and its post-trial motions for judgment notwithstanding the verdict or for a new trial. We conclude that the district court erred in denying State Farm's motion for judgment notwithstanding the verdict. We reverse and remand for further proceedings.

## I.

## FACTS AND BACKGROUND

Plaintiff Harold Young is a retired heavy equipment mechanic with an eighth grade education. He and his wife, Hazel, residents of Canyon County, Idaho, wintered in Arizona. Their daughter handled their bills, including insurance premiums, while they were away. In the fall of 1986, the daughter was ill when the Youngs were ready to travel south. To ease their daughter's burden, the Youngs wanted to find a more convenient payment plan than was available from their then current insurer, Safeco Insurance Company of America (Safeco). After meeting with his Safeco agent, Mr. Young walked across the street from the Safeco office in Caldwell, Idaho, to the State Farm office, where Patti Rector was an agent. After conferring with Ms. Rector, he decided to insure all his vehicles with State Farm.

Almost three years after purchasing State Farm insurance, the Youngs were involved in a collision with a drunk driver. They were seriously injured, and the other driver's insurance did not fully compensate them for their injuries. Believing that they had underinsured motorist coverage, the Youngs sought recovery from State Farm. Their claim was denied on the ground that the State Farm policy did not provide underinsured motorist coverage.

The Youngs filed this action against State Farm, alleging claims based on estoppel, breach of an oral contract, and negligence. Following trial the jury returned a verdict in favor of the Youngs on their estoppel theory and oral contract claim.

During trial Mr. Young testified that upon deciding to purchase insurance from State Farm, he delivered to Ms. Rector the declarations page from his Safeco policy. This declarations page listed the vehicle identification numbers and the amounts and types of insurance provided by Safeco for the three automobiles the Youngs then owned. It showed that Safeco was providing underinsured motorist coverage. Mr. Young testified that he told Ms. Rector that he wanted the same coverage that he had with Safeco, but with "everything doubled." Mr. Young said that he never expressly discussed underinsured motorist coverage with Ms. Rector and that he only told her he wanted the same coverage he had with Safeco but in increased amounts. He said she assented to his request.[1] Ms. Rector testified that she had no

---

1. Evidence that such an agreement occurred was tenuous. After stating that he handed the Safeco declarations page to Ms. Rector and told her he wanted "everything doubled on this amount," the testimony continued as follows:

   Q. Did you specifically make any reference, however, to uninsured or underinsured?
   A. No, that wasn't mentioned. The only thing we mentioned—the only thing Patty had asked me about this was about doubling medical too, and that was the only thing. There wasn't said—nothing said about anything else. The only thing I told her, I wanted everything doubled.
   Q. What did she say in response to your instructions what you have said you wanted? What did you do? What did she say?

   A. Well, I left—I just left the papers with her there on account of this serial number, and all that stuff.
   Q. Harold, what I'm getting at is, did she indicate to you in any way that this—your desires would be carried out?
   A. Oh, well, sure. I knowed they would be, you see.
   Q. Did she say that to you?
   A. Otherwise I wouldn't have left the papers. She is an honest girl.
   Q. Well, I understand that, Harold. What we are getting at here is did you get an indication from Patti Rector that the doubling of the coverage would take place?
   A. Oh, yes, absolutely, sure.

   On appeal, State Farm has argued that this testimony is insufficient to prove the formation of an oral contract. We need not reach this issue

specific recollection of her meetings with Mr. Young. She stated, however, it was her custom to go over every aspect of coverage and explain the available coverages to all applicants. According to Ms. Rector, underinsured motorist coverage was always offered to applicants. She stated that even though Mr. Young might have presented information from his Safeco policy, she would not have relied upon that documentation because it might tie her to a prior mistake by a different agent.

After his initial meeting with Ms. Rector, Mr. Young returned to the State Farm office and signed an insurance application for the policy in question, which was to cover a Dodge automobile. This application was filled out by Ms. Rector and indicated that Mr. Young was not requesting underinsured motor vehicle insurance. The application form contained a list of the various types of coverage available, including underinsured motorist coverage. By each item on the list, there was a space to place a check mark if that type of coverage was requested. Mr. Young's application had check marks indicating requests for bodily injury, property damage liability, medical payments, comprehensive, emergency road service, and *uninsured* motor vehicle coverages. The space to indicate a request for *underinsured* motorist coverage was left blank. The application contained the following language immediately above the applicant's signature line:

> I hereby apply for the insurance indicated and represent (1) *I have read this application,* (2) *the statements hereon ... are correct ...,* (emphasis added).

Mr. Young signed the application below this attestation, but testified at trial that he did not read the application before signing it.

On the same day that he applied for the policy that is the subject of this litigation, Mr. Young also signed applications for insurance on a motorhome and a Volkswagen. Both of these applications also requested uninsured, but not underinsured, motorist coverage. The complete insurance policies for all three vehicles were delivered to the Youngs. The declarations pages for all of the policies stated in clear terms that they provided uninsured motorist coverage but not underinsured motorist insurance. In May 1987, the Youngs received from State Farm premium notices for the Dodge policy and the Volkswagen policy. Both notices showed that only uninsured, not underinsured, motorist coverage was afforded. A renewal notice for the motorhome coverage received in November 1987, provided the same information.

In April 1989, three months before the accident giving rise to the Youngs' claim, Mr. Young returned to the insurance agency to renew the Volkswagen policy, which had lapsed. At that time, the agent not only asked Mr. Young to sign the application form; she also had him initial the form next to each type of available coverage that he was declining. Mr. Young's initials indicated that he was rejecting several categories of insurance, including underinsured motorist coverage. In May 1989, the Youngs received the declarations page and policy issued pursuant to this application. The declarations page once again showed that no underinsured motorist coverage was provided.

Mr. Young testified that he read none of the foregoing documents, not even the four application forms that he signed. The Youngs did not take issue with the coverage specified in their policy until after they had been injured.

State Farm moved for a directed verdict, which was denied. The jury returned a special verdict in the Youngs' favor, concluding that State Farm had breached an oral contract and was estopped from relying upon terms of the written policy which did not provide for underinsured motorist coverage. State Farm also filed post-trial motions for judgment notwithstanding the verdict or for a new trial, both of which were denied. State Farm appeals, arguing that the court erred when it instructed the jury and when it denied State Farm's motions. On cross-appeal, the Youngs argue that the district court

because, assuming such an agreement was proved, we reverse the judgment on the oral contract on other grounds.

did not award them all of the attorney fees to which they were entitled.

## II.

## DENIAL OF STATE FARM'S MOTION FOR A JUDGMENT NOTWITH- STANDING THE VERDICT WAS ER- ROR

### A. STANDARD OF REVIEW

We will first address the court's denial of State Farm's motion for judgment notwithstanding the verdict. When making a motion under I.R.C.P. 50(b) for a judgment notwithstanding the verdict, the moving party admits the truth of the adverse evidence, and every inference that legitimately may be drawn therefrom must be construed in the light most favorable to the opposing party. *Quick v. Crane,* 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986); *Brand S Corp. v. King,* 102 Idaho 731, 733, 639 P.2d 429, 431 (1981). In deciding the motion, the trial court must determine if there is substantial evidence, even if controverted, which supports the jury's verdict. *Id.* at 732–733, 639 P.2d at 430–31. Evidence is substantial if it is of such sufficient quantity and probative value that reasonable minds could conclude that the verdict was proper. *Hibbler v. Fisher,* 109 Idaho 1007, 1009–10, 712 P.2d 708, 710–11 (Ct.App.1985). The court is not free to weigh the evidence or pass on the credibility of witnesses. *Smith v. Praegitzer,* 113 Idaho 887, 890, 749 P.2d 1012, 1015 (Ct.App.1988). On appeal we apply the same standard as the trial court. *Quick,* 111 Idaho at 764, 727 P.2d at 1192. Whether the evidence is suffi- cient to create a question of fact for the jury is a question of law over which we exercise free review, giving no special deference to the decision of the trial court. *Quick,* 111 Idaho at 763, 727 P.2d at 1191. We are thus required to determine whether as a matter of law there was sufficient evidence upon which reasonable jurors could return a verdict in favor of the plaintiffs; or, as stated by our Supreme Court in *Quick,* whether "there can be but one conclusion as to the verdict that reasonable minds could have reached." 111 Idaho at 764, 727 P.2d at 1192.

### B. ESTOPPEL

State Farm avers that the contract agreed upon by the parties is the written policy sent to the Youngs, which does not provide for underinsured motorist coverage. The jury found, however, State Farm is estopped to deny underinsured motorist coverage for the Youngs.

As the basis for estoppel the Youngs as- serted at trial that they had relied upon the oral agreement to which Mr. Young testified. They predicate their estoppel argument on the doctrine set forth in *Lewis v. Continental Life and Accident Co.,* 93 Idaho 348, 351, 461 P.2d 243, 246 (1969) as follows:

> [W]here a policy holder is induced to enter into a contract in reasonable reliance on promises of or agreements with the solicit- ing representative of that insurance com- pany thereby leaving the insured person or property otherwise unprotected, and the company profits from that change of posi- tion, ... the insurance company is es- topped to deny the liability for which it actually contracted by raising provisions from its own printed policy form.

*See also Foster v. Johnstone,* 107 Idaho 61, 685 P.2d 802, (1984). The purpose of the doctrine is "to enforce the contract as origi- nally agreed upon by the parties." *Lewis,* 93 Idaho at 353, 461 P.2d at 248.

State Farm urges that it was entitled to judgment on the estoppel claim because the evidence does not support a finding that Mr. Young's reliance upon his conversation with Ms. Rector was reasonable in view of the various documents showing that the policy did not provide underinsured motorist cover- age.

State Farm is correct in asserting that an estoppel claim may not be predicated upon unjustified reliance on a verbal under- standing. In *Foster,* our Supreme Court em- phasized that to give rise to estoppel, reli- ance must be reasonable under all the cir- cumstances. 107 Idaho at 67–68, 685 P.2d at 808–09. In that case the policyholder claimed liability insurance coverage for an accident that occurred when she was driving a vehicle she did not own. The insurer de- nied the claim because the vehicle in question

was a "non-owned" automobile for which coverage was excluded by policy terms. The jury returned a verdict for the policyholder based in part upon estoppel arising from the insurance agent's verbal representation that the insurance would cover any non-owned vehicle driven by the insureds. The Supreme Court reversed the judgment in favor of the policyholder and remanded the case for a new trial because the jury had not been instructed on the meaning of "reasonable reliance." *Id.* at 67, 685 P.2d at 808. The Court stated, "It is certainly not the law in Idaho that an insured has no obligation to read his policy, and may with confidence rely on subjective impressions he may have obtained in talking with an agent prior to entering into an insurance contract."

This focus upon the reasonableness of the policyholder's reliance comports with estoppel principles applied in transactions other than insurance purchases. Our courts have consistently held that one may not assert estoppel based upon another's misrepresentation if the one claiming estoppel had readily accessible means to discover the truth. *See, e.g., Alder v. Mountain States Telephone & Telegraph Co.,* 92 Idaho 506, 511, 446 P.2d 628, 633 (1968) (discharged telephone employees could not rely upon long-standing practice of operators making free calls for themselves where employer's written rules, received by each operator, prohibited the practice; a party claiming estoppel must be "excusably ignorant of the true facts"); *Tiffany v. City of Payette,* 121 Idaho 396, 403, 825 P.2d 493, 500 (1992) (in a wrongful discharge action, a party claiming estoppel must show "lack of knowledge and of the means of knowledge of the truth as to the facts in question"); *Williams v. Blakley,* 114 Idaho 323, 325, 757 P.2d 186, 188 (1988) (one of the elements of equitable estoppel is that the party asserting estoppel "did not know or could not discover the truth"); *Brand S Corp. v. King,* 102 Idaho 731, 734, 639 P.2d 429, 432 (1981) (one asserting estoppel "must have acted reasonably in justifiable reliance on the promise made."); *Mason v. Tucker & Associates,* 125 Idaho 429, 871 P.2d 846 (Ct.App.1994) (equitable estoppel to preclude a statute of limitations defense may be applied only for so long as plaintiff did not

know and could not discover the truth). Moreover, our courts have held that a party's failure to read a contract, where he had the opportunity to read it, will not excuse his obligation to perform according to its terms. *McCall v. Potlatch Forests, Inc.,* 69 Idaho 410, 415, 208 P.2d 799, 802 (1949); *West v. Prater,* 57 Idaho 583, 593–94, 67 P.2d 273, 277 (1937); *Irwin Rogers Insurance Agency, Inc. v. Murphy,* 122 Idaho 270, 273, 833 P.2d 128, 131 (Ct.App.1992); *Liebelt v. Liebelt,* 118 Idaho 845, 848, 801 P.2d 52, 55 (Ct.App.1990).

Thus, the question presented on review of State Farm's motion for a judgment notwithstanding the verdict is whether there was before the jury substantial evidence that the Youngs' reliance upon the asserted oral agreement was reasonable. Although the reasonableness of reliance is normally a factual issue for the jury, the court may make that determination as a matter of law when the evidence leads to only one reasonable conclusion. *See Brand S Corp. v. King,* 102 Idaho at 734, 639 P.2d at 432 (1981) (reversing denial of motion for judgment notwithstanding the verdict on estoppel because evidence did not show reasonable reliance). Cf. *Corbridge v. Clark Equipment Co.,* 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986) (affirming determination on summary judgment that towing a forklift/loader through deep snow over rough incline was "misuse" of product under I.C. § 6–1405(3)(a) because the undisputed evidence could lead to only one reasonable conclusion, though question of misuse is usually a jury question); *Joyner v. Jones,* 97 Idaho 647, 650, 551 P.2d 602, 605 (1976) (in negligence action foreseeability is ordinarily a question of fact, but court may rule upon it as a matter of law when undisputed facts lead to only one reasonable conclusion); *Mico Mobile Sales and Leasing v. Skyline Corp.,* 97 Idaho 408, 412–14, 546 P.2d 54, 58–60 (1975) (same); *Umphenour v. Yokum,* 118 Idaho 102, 104, 794 P.2d 1158, 1160 (Ct.App. 1990) (reversing denial of directed verdict on negligence claim because undisputed evidence could reasonably lead to only one conclusion).

Evaluation of the reasonableness of a party's reliance must take account of the

totality of the circumstances, including the nature of the transaction and the relative sophistication of the parties. Therefore, an insurance consumer properly may be judged by more relaxed standards than would be parties to complex business transactions. Nonetheless, as our Supreme Court indicated in *Foster*, at least some modicum of care and responsibility is to be required of insurance purchasers. In this case, the evidence does not sustain a finding that the Youngs' reliance was reasonable under even the most benevolent standard.

■ According to Mr. Young's testimony, he relied solely upon his understanding of a brief conversation with the insurance agent when he handed her the declarations page from the Safeco policy—a conversation in which underinsured motorist coverage was not expressly discussed. He did not bother to read the application that he signed a few days later, which clearly did not include a request for underinsured motorist coverage. He did not read the applications for the other policies that he purchased from State Farm, which also provided for no underinsured motorist coverage. He likewise failed to read the declarations pages on any of the policies, which enumerated the coverages provided. And he did not read the premium notices providing the same information. A glance at any one of these documents would have alerted Mr. Young to the fact that State Farm did not share his understanding of the coverage to be provided. Mr. Young gave no explanation for his failure to read any of these documents other than his assumption that they specified the coverage that he requested and believed that Ms. Rector agreed to provide during their October 1986 conversation. Although Mr. Young has a limited education, he did not contend he was unable to read the applications, the declarations pages, or the premium notices; indeed, he read from those documents during the trial. He also testified that he understood very well the difference between uninsured and underinsured motor vehicle insurance and definitely intended to procure the latter.

In *Foster*, the Court indicated that the factors bearing upon the reasonableness of an insured's reliance upon an agent's representation that is contrary to policy terms include the length of time that elapsed after the policy was received and before the accident occurred, and the extent to which the insured had an opportunity to verify the coverage under the policy. Applying those factors, the Youngs' self-induced unawareness of the policy terms cannot be deemed reasonable.

The written policy's ready availability to the Youngs distinguishes this case from *Lewis v. Continental Life and Accident Co.*, 93 Idaho 348, 461 P.2d 243 (1969), upon which the Youngs rely, where an insurer was estopped to deny coverage. That case involved a claim on a group life insurance policy covering county employees. The county commissioners purchased the insurance in reliance upon a representation that the policy would cover all county employees who had been covered under the county's prior insurance plan. The master policy was kept in the county clerk's vault. A handbook that explained the benefits in simple language was supplied by the insurer and distributed to employees. When the widow of an employee made a claim for benefits, the insurer denied coverage based upon provisions in the master policy that were not mentioned in the handbook and that contradicted the representations made to the county. In that case, the employee reasonably relied upon the insurance agents' representations and the description of coverage provided in the employee handbook. He had no opportunity to learn of additional terms contained only in the master policy held in the county's vault. In the present case, by contrast, the Youngs received numerous written descriptions of the coverage afforded by their policies, and even signed four application forms, all of which consistently indicated that underinsured motor vehicle insurance was not requested or provided.

We have considered the Idaho Supreme Court's recent decision in *Featherston v. Allstate Insurance Co.*, 125 Idaho 840, 875 P.2d 937 (1994), which arose on facts similar to those presented here. We conclude, however, that the *Featherston* decision is inapposite because it does not address the legal issues that are before us. The plaintiff in

*Featherston* decided to transfer his automobile insurance from Farmers Insurance to Allstate Insurance. He provided the Allstate agent with a copy of the billing and declarations page of his Farmers policy. The evidence was unclear as to whether the Farmers policy provided underinsured motorist coverage. Featherston did not discuss underinsured motorist coverage with the agent, and Allstate did not offer underinsured motorist coverage at the time. Featherston purchased an Allstate policy, and it was regularly renewed over a period of six years. Featherston never read the policy, which did not provide underinsured motorist coverage. Ultimately, a member of Featherston's family was injured in an automobile accident with an underinsured motorist. Allstate denied coverage and Featherston sued, alleging negligence, fraud, misrepresentation, estoppel, and violations of the Insurance Trade Practices Act. The district court granted summary judgment to Allstate. Apparently the dismissal of Featherston's estoppel claim on summary judgment was not challenged on appeal. Featherston appealed only the dismissal of the negligence count, and the Supreme Court reversed the summary judgment as to that cause of action only. Consequently, *Featherston* does not discuss estoppel or a breach of contract claim. Rather, the Court considered Featherston's argument that there existed a genuine factual issue material to his negligence claim concerning the scope of the duty of care owed to him by Allstate's agent. The Supreme Court held that this issue "cannot be decided on the record before the trial court," apparently concluding that Allstate's evidence in support of its summary judgment motion did not establish the absence of material issues of fact with respect to the duty of care.

Unlike *Featherston,* the present appeal does not present a negligence claim and was not concluded by summary judgment. The Youngs had an opportunity to present at trial all of the evidence they could marshall in support of their estoppel claim. The only reasonable conclusion to be drawn from the evidence is that the Young's reliance on the alleged verbal understanding was unreasonable.

We emphasize that this is not a case where the written clause at issue is hidden deep within a lengthy insurance policy or is stated in such obscure or technical terms as to be impenetrable to the average insurance purchaser. The insurance applications that Mr. Young signed and the declarations pages and premium notices that the Youngs received over a period of two and one-half years all indicated in simple language that no underinsured motorist coverage was sought or provided. If estoppel is to be applied it could more readily be invoked against the Youngs, who on four separate application forms expressly rejected offers of the coverage they now claim, than against State Farm, which repeatedly disclosed in writing its understanding of the coverage afforded.

The evidence presented at trial, even when viewed in the light most favorable to the Youngs, cannot reasonably support a finding that the Youngs' reliance on the oral agreement was reasonable. Therefore, the estoppel issue should not have been presented to the jury.

## C. BREACH OF ORAL CONTRACT

We next consider the jury's verdict finding State Farm liable for breach of an oral contract. State Farm urges that it was entitled to a judgment notwithstanding the verdict on this claim by application of the parol evidence rule. We agree.

█ Policies of insurance are contracts and are governed by the same rules that are applicable to contracts generally. *March v. Snake River Mutual Fire Insurance Company,* 89 Idaho 275, 280, 404 P.2d 614, 617 (1965). *See also Anderson v. Title Insurance Co.,* 103 Idaho 875, 878, 655 P.2d 82, 85 (1982); *Ryan v. Mountain States Helicopter, Inc.,* 107 Idaho 150, 153, 686 P.2d 95, 98 (Ct.App.1984); *Mutual of Enumclaw Insurance Co. v. Wood By-Products, Inc.,* 107 Idaho 1024, 1028, 695 P.2d 409, 413 (Ct.App. 1984).

One of those generally applicable principles of contract law is the parol evidence rule, which has been expressed as follows:

It is the general rule that when a contract has been reduced to writing, which the

parties intend to be a complete statement of their agreement, any other written or oral agreements or understandings (referred to in many cases as extrinsic evidence) made prior to or contemporaneously with the written "contract" and which relate to the same subject matter are not admissible to vary, contradict or enlarge the terms of the written contract.

*Tusch Enterprises v. Coffin,* 113 Idaho 37, 44, 740 P.2d 1022, 1029 (1987); *Chapman v. Haney Seed Co., Inc.,* 102 Idaho 26, 28, 624 P.2d 408, 410 (1981). Underlying the rule is the recognition that a writing, if complete, clear and unambiguous, "furnishes better and more definite evidence of what was undertaken by each party than the memory of man," 30 AM.JUR.2d *EVIDENCE* § 1016 at 151–52 (1967). The parol evidence rule is said to be "essential to the certainty and stability of written obligations." *Id.*

The insurance contract between State Farm and the Youngs was stated in an integrated writing, and the parol evidence rule therefore prohibits Youngs' claim on a prior oral agreement unless some limitation upon or exception to the parol evidence rule applies.

■■■ The Youngs maintain that the parol evidence rule is not operative with respect to insurance contracts, relying solely upon the *Lewis* case. That decision, however, does not make the parol evidence rule inapplicable to insurance agreements. Rather, the Court in *Lewis* held that the insurer was estopped to assert certain policy terms and therefore could not rely upon those terms as a basis to exclude parol evidence. As explained above, however, the estoppel principles upon which the *Lewis* decision turns are not applicable here because of the absence of reasonable reliance by the Youngs.

We perceive no sound reason to adopt a broad rule exempting insurance agreements from the strictures of the parol evidence rule. As our Supreme Court has recognized, *see Dullenty v. Rocky Mountain Fire & Casualty Co.,* 111 Idaho 98, 106, 721 P.2d 198, 206 (1986), insurance companies can survive only if they are able to assess the nature and magnitude of the risks they assume and to charge premiums appropriate to the risks.

A doctrine exempting insurance contracts from the parol evidence rule (or a decision permitting estoppel against State Farm and relieving the Youngs of the parol evidence rule's application in the circumstances presented here) would leave insurance companies in this state unable to ascertain the scope of the risks they are assuming. Neither the content of an application signed by the customer nor the clearest description of the coverage afforded in the policy would offer any limit on an insurance carrier's liability.

■■■ We conclude, therefore, that the parol evidence rule applies to the Youngs' oral contract claim and that the Youngs have identified no limitation upon or exception to that rule which would permit recovery on an oral agreement made prior to the written contract. It follows that State Farm's motion for a judgment notwithstanding the verdict on this cause of action should have been granted.

## III.

## CONCLUSION

Because of our disposition of the estoppel and oral contract issues, we need not address State Farm's claims of error regarding the jury instructions and the denial of its motion for a new trial. The Youngs' cross-appeal asserting that the attorney fee award by the district court is inadequate is also rendered moot by our decision vacating the judgment in favor of the Youngs, including the award of fees.

This action is not concluded, however. The Youngs' complaint alleged not only estoppel and breach of an oral contract but also a cause of action for negligence. The special verdict form submitted to the jurors instructed that if they found in favor of the plaintiffs on the estoppel issue and the breach of oral contract claim, they were not to address the negligence count. Consequently, the Youngs' negligence claim was not resolved below. No argument for disposition of that claim has been made in this appeal. Accordingly, this matter must be remanded for

further proceedings on the cause of action for negligence.

The judgment against State Farm Mutual Automobile Insurance Company on the Youngs' allegations of estoppel and breach of an oral contract is reversed. This action is remanded to the district court for further proceedings on the cause of action for negligence. Costs to appellant.

PERRY, J., concurs.

WALTERS, Chief Judge, dissenting.

I respectfully dissent. With regard to the estoppel claim, the majority supplants the jury's verdict with its own opinion that Mr. Young's conduct in relying upon the insurance agent's representation to provide coverage as requested by Mr. Young was not reasonable. I cannot join in that approach.

The majority recognizes that the reasonableness of reliance is normally a factual issue for the jury. The Court then concludes, however, that it may make the reasonableness determination itself as a matter of law when the evidence leads to only one reasonable conclusion. The Court cites *Brand S Corporation v. King*, 102 Idaho 731, 734, 639 P.2d 429, 432 (1981) for support, parenthetically noting that *Brand S* reversed the denial of a motion for judgment notwithstanding the verdict on a claim asserting estoppel because the evidence did not show reasonable reliance. The precise language of *Brand S* in pertinent part is:

> [T]he promisee must act reasonably and in reliance on the representation of the promisor. The respondents submitted *no* evidence, reasonable or otherwise, showing action in reliance on the appellant's alleged promise. Because the record *is void* of evidence indicating that the respondents in any way changed their position as a result of the alleged representation and suffered a detriment as a result thereof they cannot avail themselves of the doctrine of promissory estoppel.

102 Idaho at 734, 639 P.2d at 432 (emphasis added).

There can be no question that but one conclusion reasonably could be reached in *Brand S* in the absence of evidence demonstrating any reliance needed for application of the doctrine of estoppel. Here, however, there was conflicting evidence—the question of reliance was hotly disputed by the parties. In such a situation, the rule found in *Brand S* is not applicable. Rather, the principle expressed by the Idaho Supreme Court in *Watson v. Navistar International Transportation Corp.*, 121 Idaho 643, 827 P.2d 656 (1992), is appropriate. There, the Court addressed its role on appellate review of an order denying a motion for judgment notwithstanding the verdict, stating:

> In *Corbridge v. Clark Equip. Co.*, 112 Idaho 85, 730 P.2d 1005 (1986), we held that where the undisputed facts lead to only one reasonable conclusion, the question of whether the manufacturer has a duty to foresee, protect, or warn against product misuse is one of law for determination by the court. While we continue to adhere to this rule, we find it inapplicable in this case because of the conflicting evidence contained in the record. *Where there is conflicting evidence, we are required to construe all of the evidence in favor of the jury verdict, including all reasonable inferences therefrom, to determine whether there is substantial evidence to support the verdict.*

121 Idaho at 661, 827 P.2d at 674 (emphasis added). The same approach should be taken here. Construing all of the evidence in favor of the jury's verdict, including all reasonable inferences which can be drawn from that evidence, leads me to the conclusion that there was substantial evidence to support the jury's verdict. This was the same conclusion arrived at by the district judge below. Accordingly, the order denying the motion for judgment notwithstanding the verdict on the estoppel issue should be affirmed.

I believe my conclusion is also supported by the Supreme Court's recent decision in *Featherston v. Allstate Insurance Co.*, 125 Idaho 840, 875 P.2d 937 (1994). In that case, the Court vacated a summary judgment on the basis that a genuine issue of material fact existed with respect to the duty of the insurance company to provide underinsured motorist coverage to the insured. That same duty existed in the present case. If, as

*Featherston* holds, the question of the performance of that duty is a matter to be decided by the jury, then the submission of the question to the jury in this case was proper. The jury's decision was based upon substantial, albeit conflicting, evidence and should be sustained as a logical extension of the approach taken by the Supreme Court in *Featherston.*

I also disagree with majority's conclusion that the parol evidence rule precluded the Youngs' claim based on the oral contract. In *Lewis v. Continental Life and Accident Co.,* 93 Idaho 348, 461 P.2d 243 (1969), the Idaho Supreme Court noted that insurance contracts are unique and consumers generally lack bargaining power when purchasing insurance. 93 Idaho at 351, 461 P.2d at 246. As the district court observed in the instant case, *Lewis* recognized the unique nature of insurance contracts in that the policyholder seldom sees the policy until after he has met with the agent and has already committed to the insurance agreement based on the agent's representations. The Court in *Lewis* stated that the insurance company is estopped to deny coverage by asserting terms in the written contract which contradict the promises or agreements of the agent if a consumer has been induced to enter into an insurance contract in reasonable reliance on promises of or agreements with the insurance agent, and is left unprotected by insurance when the company profits from the consumer's change of position. Relying primarily on this rule, the district court in the instant case held that the "parol evidence rule does not bar the presentation of evidence that an insured entered into a different agreement with the company's agent than that embodied in the policy."

State Farm argued here, and the majority apparently agrees, that reliance on *Lewis* is wrong, that the agent in this case made no promises or agreements beyond the written contract, and that the company did not profit because the Youngs never paid for underinsured motorist coverage. Although there was no evidence of an articulated promise from the agent, Mr. Young testified that the agent indicated he would receive coverage sufficient to duplicate the coverage existing in the Safeco policy. The agent could only testify to her customary practice. State Farm did profit from the Youngs' business. Although the Youngs did not pay for underinsured motorist coverage, they were induced to transfer their coverage to State Farm because the agent stated that they could save money if they insured all of their vehicles with State Farm. The Youngs originally sought only to insure a single vehicle with State Farm, but on the agent's advice applied for coverage with State Farm for all of their vehicles. The district court determined that Mr. Young's reliance on the oral contract, which contradicted the written policy, was reasonable in light of the circumstances. I agree and conclude that the parol evidence rule did not preclude Mr. Young's testimony concerning the oral contract in this case.

For the benefit of the parties, I should state that I have considered the record in light of the issues raised and the arguments made by both sides. I am not persuaded that the district court erred in any respect as claimed either in the appeal by State Farm or in the cross-appeal by the Youngs. I would affirm the judgment in its entirety.