(October 24, 1921.)

# O. C. BEEBE, Appellant, v. PIONEER BANK AND TRUST COMPANY, Respondent.

[201 Pac. 717.]

WRITTEN CONTRACT—PAROL EVIDENCE RULE—FIXTURES—INTENT.

1. When a contract is reduced to writing and signed, it constitutes the final agreement of the parties as to its subject matter, and prior or contemporaneous oral agreements or statements, varying its terms, are not admissible.

2. When a mortgage expressly covers a lot and all improvements situate thereon, it includes fixtures which have become part of the realty, and a contemporaneous oral agreement that the mortgage does not cover fixtures is not admissible as between the parties and their privies.

3. Personal property, in order to lose its character as a chattel and become a fixture, must be annexed to the realty, either actually or constructively; must be appropriated to the use of that part of the realty with which it is connected, and must be intended as a permanent accession to the freehold.

4. When the question as to whether or not a fixture has become part of the realty arises between the person who annexed it and another, the secret intention of the former, not disclosed to the latter, is not material, but the inquiry is as to what intention must be imputed to the former in the light of all the circumstances, tested by common understanding.

APPEAL from the District Court of the Sixth Judicial District, for Lemhi County. Hon. F. J. Cowen, Judge.

Action for conversion. Judgment for appellant for one dollar damages. Reversed and new trial ordered.

Publisher's Note.

2. Parol exception of fixtures from conveyance, see note in 14 A. L. R. 1287.

4. Fixing character of property as realty or personalty by agreement, see notes in 1 Ann. Cas. 312; 19 L. R. A. 441.

Where and against whom fixtures may retain character of personal property, see note in 84 Am. St. 877.

Quarles & Cherry, for Appellant.

The admission of evidence showing preliminary negotiations leading up to the execution of the deed to Slaughter by the First National Bank was erroneous; the negotiations were merged into the deed, and the evidence was contradictory to the terms of the deed. (*Jacobs v. Shenon,* 3 Ida. 274, 281, 29 Pac. 44; *Stein v. Fogarty,* 4 Ida. 702, 43 Pac. 681; *First Nat. Bank v. Bews,* 5 Ida. 678, 51 Pac. 777; *Newmyer v. Roush,* 21 Ida. 106, Ann. Cas. 1913D, 433, 120 Pac. 464; 10 R. C. L., secs. 208–214, and notes.)

The court's instructions 11 and 12, intimating in effect that statements made during the pendency of negotiations for the loan, were manifestations of intent to fix the character of personalty upon the fixtures in question, and notice of their character were misleading, contrary to law, and prejudicial. (*Jacobs v. Shenon, supra; Josslyn v. Daly,* 15 Ida. 137, 96 Pac. 568; *Whitney v. Dewey,* 10 Ida. 633, 80 Pac. 1117, 69 L. R. A. 572; *McIntosh etc. Co. v. Rice,* 13 Colo. App. 393, 58 Pac. 358; *Irving v. Cunningham,* 66 Cal. 15, 4 Pac. 766; *Liverpool etc. Ins. Co. v. T. M. Richardson Lumber Co.,* 11 Okl. 585, 69 Pac. 938; *Turner v. Gumbert,* 19 Ida. 339, 114 Pac. 33; *Tyson v. Neill,* 8 Ida. 603, 70 Pac. 790.)

Instruction 13 given by the court was erroneous in that it did not distinguish between furniture not attached to a building and fixtures permanently attached thereto for the purposes of the business for which the building was constructed; it overlooked and ignored the language and effect of the mortgage and decree foreclosing same. (22 Cyc. 5; Warvelle on Vendors, sec. 11; *In re Beeg,* 184 Fed. 522; *McFadden v. Allen,* 134 N. Y. 489, 32 N. E. 21, 19 L. R. A. 446.)

Instruction 14 was clearly error. Plaintiff's requested instructions 1, 2, 3 and 4 correctly stated the law applicable to the proven facts of the case and should have been given. (Warvelle on Vendors, secs. 10, 11; *Rogers v. Crow,* 40 Mo. 91, 93 Am. Dec. 299; *McFadden v. Allen, supra.*)

E. W. Whitcomb, for Respondent.

With regard to things personal annexed to the realty by agreement between the mortgagor and mortgagee, it may be provided that such chattels shall retain their character as personalty or chattels, although attached to the realty in such a manner that, without such agreement, they would lose their character as personal property. (*Teaff v. Hewitt,* 1 Ohio St. 511, 59 Am. Dec. 634; *Edwards & B. Lumber Co. v. Rank,* 57 Neb. 323, 73 Am. St. 514, 77 N. W. 765; *Henkle v. Dillon,* 15 Or. 610, 17 Pac. 148; *Ferris v. Qwimby,* 41 Mich. 202, 2 N. W. 9; *Myrick v. Bill,* 3 Dak. 284, 17 N. W. 268; *Foster v. Mabe,* 4 Ala. 402, 37 Am. Dec. 749; *Dobschuetz v. Holliday,* 82 Ill. 371; *Binkley v. Forkner,* 117 Ind. 176, 19 N. E. 753, 3 L. R. A. 33; *Tyson v. Post,* 108 N. Y. 217, 2 Am. St. 409, 15 N. E. 316; *Freeman v. Leonard,* 99 N. C. 274, 6 S. E. 259; *Pond Machine Tool Co. v. Robinson,* 38 Minn. 272, 37 N. W. 99; *Burrill v. Wilcox Lumber Co.,* 65 Mich. 571, 32 N. W. 824; *Second Nat. Bank v. O. E. Merrill Co.,* 69 Wis. 501, 34 N. W. 514; *Harkey v. Cain,* 69 Tex. 146, 6 S. W. 637; *Boise-Payette Lumber Co. v. McCornick,* 32 Ida. 462, 186 Pac. 252; *Fratt v. Whittier,* 58 Cal. 126, 41 Am. Rep. 251.)

A refusal to allow the defendant to show what was the intent between the parties at the time of the making of the mortgage would result in wrong to the defendant and would defraud it of property to which it was legally and equitably entitled. (*Oliver v. Oliver,* 4 Rawle (Pa.), 141, 144, 26 Am. Dec. 123; *Pierce v. Robinson,* 13 Cal. 116; *Miller v. Fichthorn,* 31 Pa. St. 252, 261; *Urich v. McPherson,* 27 Ida. 319, 149 Pac. 295; *Frederick v. Devol,* 15 Ind. 357; *Straw v. Straw,* 70 Vt. 240, 39 Atl. 1095; *Noble v. Sylvester,* 42 Vt. 146; *Westheimer v. Thompson,* 3 Ida. 560, 32 Pac. 205.)

Even though the annexation is such that the articles annexed cannot be removed without injury to the building, it does not conclusively show an intent that they shall be a part of the realty. (*Allen v. Mooney,* 130 Mass. 155;

*Quinby v. Manhattan Cloth etc. Co.*, 24 N. J. Eq. 260;
*Voorhees v. McGinnis*, 48 N. Y. 278.)

McCARTHY, J.—Appellant sued the respondent bank for
the value of a bank vault door with its facings and certain
furniture and fixtures removed by respondent from a bank
building formerly occupied by it, which had been acquired
by appellant through sheriff's sale, after foreclosure of a
mortgage. The building was originally constructed by
Langsdorf & Co., bankers, for their own banking purposes.
When it was near completion, at a time when the fixtures in
question had been partly installed, the First National Bank
took over the Langsdorf banking business and the real estate.
It completed the installation of the fixtures, which consisted
of railings, counters, shelves, and partitions with marble
bases, glass and grill work, which were ordered by the archi-
tect of the building, designed by him, for this particular
building, and matched the other interior woodwork of the
structure. They were set flush against the walls and fastened
to them, the baseboard being cut and fitted around the par-
titions, which were attached to the floor with angle iron
braces. It took two carpenters one day and three hours to
remove them, and their removal left marks upon the walls
and gaps in the baseboard. The vault door was built into
the wall of the vault, imbedded in cement. It took an
expert stone mason and concrete worker fifteen hours to get
it out of the wall by cutting away the concrete built around
it.

For the purpose of securing a loan, the First National
Bank mortgaged this real property to C. S. Burton, trustee
for James D. Murdock, the transaction being accomplished
through Carl D. Slaughter, to whom the property was
deeded by the bank, and who executed a mortgage to Bur-
ton, and then deeded the property back to the bank. The
mortgage was foreclosed, and appellant bought the prop-
erty at the sheriff's sale, receiving a certificate of sale and
later a sheriff's deed. The mortgage described the lot upon

which the bank building was situated and contained the words "with the improvements thereon situated." The sheriff's certificate of sale and sheriff's deed gave this same description. Subsequent to the sheriff's sale and the delivery of the certificate, respondent bought the property in question from one L. who had bought it from the receiver of the bank, and without appellant's consent, respondent removed it.

At the trial, the court, over the objections of the appellant, allowed respondent to introduce testimony that H. G. King, an officer of the bank, who negotiated the loan for the bank, had a verbal understanding with Burton that the mortgage was to cover the real estate, not including the furniture and fixtures, also testimony that the property in question was carried on the books of the bank as "furniture and fixtures."

The verdict and judgment were for the appellant in the sum of one dollar. All the evidence as to value makes it clear that this was a verdict adverse to appellant so far as the conversion is concerned, and that the one dollar is nominal damages for injury to the building caused by detaching and removing the property in question.

Appellant's principal assignments of error are the admission of the above evidence over his objections, the giving of certain instructions, and the refusal to give certain instructions requested by him.

The mortgage was a written contract between respondent's predecessor in interest and the mortgagee. It described the property as the lot "with the improvements thereon situated." This would include any fixtures which had become part of the realty.; it would not include fixtures which had not become part of the realty. Whether the fixtures in question had or had not become part of the realty would depend upon the application of established rules of law to the particular circumstances of the case. A parol agreement between King, who negotiated the transaction for the mortgagor, and Burton, who took the mortgage as trustee,

to the effect that the mortgage did not cover fixtures, would vary the terms of the written agreement as embodied in the mortgage. When a contract is reduced to writing and signed, it constitutes the final agreement of the parties as to its subject matter and prior or contemporaneous parol agreements or statements varying its terms are not admissible. (*Jacobs v. Shenon,* 3 Ida. 274, 281, 29 Pac. 44; *Stein v. Fogarty,* 4 Ida. 702, 43 Pac. 681; *First National Bank v. Bews,* 5 Ida. 678, 51 Pac. 777; *Newmyer v. Roush,* 21 Ida. 106, 123 Ann. Cas. 1913D, 433, 120 Pac. 464; 10 R. C. L., Subject Evidence, secs. 208–214, and notes.) The parol agreement between King and Burton testified to by the former, varied the terms of the mortgage, and testimony as to it was not admissible.

Respondent's counsel cites us to cases in which it is held that, by agreement, property may retain the character of a chattel, although annexed to the land in such a way as, in the absence of such an agreement, would constitute it a part of the realty. This doctrine is well expressed in a leading New York case as follows:

"But, as by agreement, for the purpose of protecting the rights of vendors of personalty, or of creditors, chattels may retain their character as chattels, notwithstanding their annexation to the land in such a way as in the absence of an agreement would constitute them fixtures (*Ford v. Cobb,* 20 N. Y. 344; *Sisson v. Hibbard,* 75 N. Y. 542), so, also, it would seem to follow, that by convention, the owner of land may reimpress the character of personalty on chattels, which, by annexation to the land, have become fixtures according to the ordinary rule of law, provided only that they have not been so incorporated as to lose their identity and the reconversion does not interfere with the rights of creditors or third persons." (*Tyson v. Post,* 108 N. Y. 217, 2 Am. St. 409, 15 N. E. 316.)

In none of these cases is a written agreement permitted to be varied by an oral agreement. In the case just above cited the court says that an oral agreement relied on by the prevailing party was not invalid on the ground that it

varied a certain written instrument, because he was not a party to it. The decision clearly implies that the case would be far different if the party relying on the oral agreement had been a party to the written one. Obviously an oral agreement in regard to fixtures is no exception to the general rule which forbids parol evidence to contradict a written agreement.

The tests that are to be applied in determining whether a fixture becomes part of the realty or retains the character of a chattel are clearly expressed by this court in *Boise Payette Lumber Co. v. McCornick,* 32 Ida. 462, 186 Pac. 252.

"Personal property, in order to lose its character as a chattel and become a fixture, must be annexed to the realty, either actually or constructively; must be appropriated to the use of that part of the realty with which it is connected, and must be intended as a permanent accession to the freehold. . . . .

"In the leading case of *Teaff v. Hewitt,* 1 Ohio St. 511, 59 Am. Dec. 634, it was sought to lay down tests of general application for determining when an article becomes a fixture. The criterion in this case is formulated as follows:

" '1. Actual annexation to the realty, or something appurtenant thereto.

" '2. Appropriation to the use or purpose of that part of the realty with which it is connected.

" '3. Intention of the party making the annexation to make the article a permanent accession to the freehold— this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.'
. . . .

"Many authorities make the intention with which an article was annexed the consideration of paramount importance. These cases suggest that the other tests are mainly important as evidence of such intention. (Ewell on Fixtures, 2d ed., bottom pp. 30 and 31.)

"In *Hopewell Mills Co. v. Taunton Sav. Bank,* 150 Mass. 519, 15 Am. St. 235, 23 N. E. 327, 6 L. R. A. 249, it is said:

" 'These cases seem to recognize the true principle upon which the decisions should rest, only it should be noted that the intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act. It is an intention which settles, not merely his own rights, but the rights of others who have or may acquire interests in the property. They cannot know his secret purpose, and their rights depend not upon that, but upon the inferences to be drawn from what is external and visible. In cases of this kind every fact and circumstance should be considered which tends to show what intention, in reference to the relation of the machine to the real estate, is properly imputable to him who put it in position.' (See, also, *Tate v. Blackburne,* 48 Miss. 1.)

"Except in cases where, by contract or agreement, the intention of the party who made the annexation determines the character of the article or machine as to whether it is a chattel or a fixture, the inquiry is not strictly as to the intention of the person himself who annexed the chattel to the freehold. Thus, in the case at bar the contest is between an attaching creditor and a mortgagee. Neither party was bound by the intention existing in the mind of the owner. The inquiry is as to what intention must be imputed to him in the light of all the circumstances, when tested by the common understanding of those familiar with the subject. As suggested by Lindley, L. J., in the case of *Viscount Hill v. Bullock,* 2 Chancery, 482, where it was claimed certain stuffed birds were fixtures: 'After all there is such a thing as common sense, and it must be brought to bear upon the question of whether these birds are or are not fixtures.' " (*Boise-Payette Lumber Co. v. McCornick, supra.*)

Under the rule above expressed, the fact that the bank carried the property in question on its books as fixtures was not admissible to show its true character. If it tended

to show an intent on the part of the bank, it was a secret intent not disclosed to the mortgagee or the appellant, and was therefore not admissible. Applying the tests laid down in the above decision to the property in question, in the light of the evidence, the door to the bank vault was clearly part of the realty, and it would have been proper for the court to have so instructed the jury. As to the other property, a question of fact was presented which should have been presented to the jury under proper instructions along the lines suggested in *Boise-Payette Lumber Co. v. McCornick, supra.* Applying the rule of that decision to the instructions given by the court and assigned as error by appellant, instructions 11, 12 and 16 were erroneous. The refusal to give appellant's requested instructions 1, 2, 3 and 4 was also error.

For the reasons given the judgment is reversed and the case remanded for a new trial. Costs awarded to appellant.

Rice, C. J., and Budge and Dunn, JJ., concur.

Lee, J., being disqualified, did not sit at the hearing and took no part in this opinion.