IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37776

| | | |
|---|---|---|
| STEEL FARMS, INC., | ) | |
| | ) | Idaho Falls, August 2011 Term |
| Plaintiff-Counterdefendant-Appellant, | ) | |
| | ) | 2012 Opinion No. 28 |
| v. | ) | |
| | ) | Filed: January 27, 2012 |
| CROFT & REED, INC., | ) | |
| | ) | Stephen Kenyon, Clerk |
| Defendant-Counterclaimant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Joel E. Tingey, District Judge.

The I.R.C.P. 54(b) judgment entered by the district court is vacated. The district court's grant of partial summary judgment is reversed and the case is remanded for proceedings consistent with this opinion.

Holden, Kidwell, Hahn & Crapo, P.L.L.C., Idaho Falls, for appellant. DeAnne Casperson argued.

Beard St. Clair Gaffney PA, Idaho Falls, for respondent. Michael Gaffney argued.

_____

HORTON, Justice.

Croft & Reed, Inc. and Steel Farms, Inc. had a preexisting landlord-tenant relationship when they entered into a written agreement granting Steel Farms a lease and option (Option A) to purchase a farm in Bonneville County (the Property). The lease had an express four-year term. Steel Farms believed the four-year term was a mistake because the option to purchase the Property did not mature until after the four-year lease term expired. In response to a request from Steel Farms, Croft & Reed's secretary made a handwritten interlineation on the lease agreement which purported to extend the lease term for an additional year. While Steel Farms was a tenant, it purchased and installed irrigation equipment on the Property, which was attached to the Property's irrigation system. Steel Farms later granted Walker Land, Inc. an option to purchase the Property (Option B) from Steel Farms.

1

Steel Farms sought to exercise Option A after leasing the Property for four years, and Croft & Reed refused. Steel Farms sued, and the parties filed cross motions for summary judgment. The district court granted partial summary judgment in favor of Croft & Reed, and later certified that judgment under I.R.C.P. 54(b). Steel Farms appeals the certified judgment. We vacate and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kevin Steel and his brother, Doug Steel, were the secretary and president of Steel Farms. Beginning in the 1980s, Steel Farms entered into a series of agreements regarding the Property with Venna and Richard Reed, husband and wife, and their corporation, Croft & Reed. Richard and Venna each passed away before this litigation commenced.

For years, Croft & Reed leased agricultural property to Steel Farms as a crop share tenant. When Steel Farms first took possession of the Property, the Property had an irrigation system that consisted of a ground well, pump, mainlines, and hand lines. In 1993, Steel Farms received Richard Reed's permission to replace the hand lines with a pivot irrigation system. At its own expense, Steel Farms installed and maintained the pivot system, which it attached to the preexisting ground well, pump, and mainline. The pivot line was detachable, and Steel Farms often moved the line, using it to irrigate two fields. The pivot line had a generator, motor, and wheels, and could be self-propelled. When the parties later entered a cash lease, the lease provided that Steel Farms was responsible for maintaining the pivot lines while Croft & Reed was responsible for maintaining the pump.

In 1994, the parties entered the first of a series of year-long cash leases. In 1998, Steel Farms purchased and installed a second pivot system on the Property so that it no longer had to move the pivot line to irrigate both fields. The lender that financed the purchase filed a UCC-1 financing statement to secure its interest in the purchased equipment. The lender also obtained an equipment disclaimer from Richard Reed whereby Croft & Reed waived any fixture claim to the equipment purchased by Steel Farms. In 2005, Steel Farms also purchased and installed a new pump.

On April 22, 2004, the parties entered into a Lease and Option agreement (Lease and Option) for Steel Farms' possession of the Property. The agreement described the Property by its physical address and stated "[t]he Premises shall consist of the lands and improvements and fixtures on the property more fully described on Exhibit 'A' attached hereto," which contained a

2

metes and bounds legal description of the Property.  The Lease and Option expressly stated that Steel Farms' lease began April 22, 2004 and ended March 1, 2008, with Steel Farms to pay $40,000 rent annually.   The agreement provided that Steel Farms could not assign or otherwise transfer its "interest in this Lease or in the Premises . . . " without Croft & Reed's written consent.

Under the Lease and Option, Steel Farms also received Option A, an option to purchase the Property for $330,006.13 beyond its annual lease payments.  The record demonstrates that the purchase price was based on an amortization schedule that accounted for several $40,000 annual payments and a six percent annual interest rate.  Both Kevin Steel and Richard Hale, Croft & Reed's accountant, stated the sale was structured in this manner to effect certain tax planning favorable to the Reeds.  Hale testified that the lease was for a five-year term and informed Steel Farms' attorney, via an April 23, 2004 fax, that the lease term was for a period of five, not four, years.

To exercise Option A, Steel Farms was required to:

> . . . give written notice thereof to the Landlord subsequent to the maturity of this option on July 15, 2008 and during the Term of this lease (including any agreed extension or exercised option term but excluding any holdover term).  Any attempt to exercise the Option that does not strictly comply with this paragraph is void and does not constitute an effective exercise the [sic] Option.

Steel Farms would become a holdover tenant if it "remain[ed] in possession of all or any part of the Premises after the expiration of the term hereof, with or without the express or implied consent of landlord . . . ."  Steel Farms could not sell, contract to sell, assign, contract to assign, "or otherwise transfer or hypothecate or assign as security or pledge or otherwise encumber [Steel Farms'] interest in the Option or the Premises or any part thereof separate from this lease, without" Croft & Reed's written consent.  If Steel Farms violated this provision, Option A would terminate immediately and without notice.  The Lease and Option also contained a merger clause requiring alterations to be made by written instrument, and a clause providing for attorney fees in the event a party sought to enforce the Lease and Option.

In January 2006, Steel Farms requested Croft & Reed's consent to assign the lease to Walker Land and Cattle, LLC (Walker Land).  A document to that effect was drafted and endorsed by both Venna Reed on behalf of Croft & Reed and Kevin Steel on behalf of Steel Farms.  The document stated that the lease between Steel Farms and Croft & Reed began April

24, 2004 and ended March 1, 2009, rather than March 1, 2008 as stated in the Lease and Option. Walker Land did not endorse the document, and the assignment never occurred. Around that time, Kevin Steel was informed by Croft & Reed's secretary and the Reeds' daughter, Virginia Mathews, that all communications with Croft & Reed should be conducted through her.

In April 2006, Kevin approached Virginia because he believed that the written March 1, 2008 lease termination date was a mistake. Kevin believed the lease was intended to terminate on March 1, 2009, such that Option A could be exercised during the initial lease term. Virginia told Kevin she was unsure whether she was authorized to modify the Lease and Option, but after Kevin explained that he understood her role as secretary authorized her to make modifications on behalf of Croft & Reed, Virginia struck "2008" from the agreement and handwrote "2009." Both Virginia and Kevin placed their initials alongside the interlineation.

On April 18, 2006, two agreements were executed. One was a sublease, executed by Kevin Steel on behalf of Steel Farms, Venna Reed on behalf of Croft & Reed, and the several members of Walker Land. The agreement granted Walker Land a sublease interest in the Property for an initial term that began February 15, 2006 and terminated February 14, 2007. Walker Land could exercise two options to extend the sublease, each for an additional, consecutive year. If Walker Land exercised both options to extend, its sublease would ultimately expire on February 14, 2009. The other document was executed by Steel Farms and Walker Land, and it granted Walker Land Option B, an option to purchase the Property from Steel Farms for $832,830. Option B commenced March 21, 2006 and terminated simultaneously with the termination of Walker Land's sublease, but no later than November 15, 2008. The document granting Option B stated that at the time the document was executed, Steel Farms did not own the Property but rather leased it from Croft & Reed with an option to purchase the Property before Steel Farms' lease expired. While Walker Land could exercise its option at any time by providing Steel Farms written notice of its intention to do so, it could not purchase the Property from Steel Farms until "such time as [Steel Farms] shall own fee simple title to the Property."

On July 18, 2008, Steel Farms gave Croft & Reed notice of its intent to exercise Option A. Approximately two months later, Croft & Reed refused the request. Croft & Reed eventually listed the Property for sale at a price of $2,053,900. Steel Farms sued, seeking an injunction prohibiting Croft & Reed's sale of the Property, specific performance of the Lease and Option, and declaratory judgment as to the ownership of the irrigation equipment, and also asserting

4

claims of mutual mistake and unjust enrichment. One week later, Croft & Reed sent Steel Farms notice of lease termination and repossession. Croft & Reed answered and counterclaimed, seeking declaratory judgment invalidating the lease and asserting breach of contract, slander of title, and interference with economic advantage. The parties filed cross motions for summary judgment.

Ruling on the motions for summary judgment, the district court held that the Lease and Option was unambiguous as to the duration of the lease term, and that the Lease and Option required Steel Farms to exercise Option A during an agreed extension of the lease. The court thus excluded parol evidence that suggested the lease was intended to last for five rather than four years. However, the district court held that a question of fact remained as to whether the written lease term was based on a mutual mistake.[1] The court held that Virginia Mathews' interlineated modification of the lease termination date was ineffective because the modification was not contained within a separate instrument signed by both parties. Further, the district court held that, pursuant to the Lease and Option, Steel Farms' failure to obtain Croft & Reed's consent to offer Walker Land an option to purchase the Property caused Steel Farms' Option A to terminate.

The district court entered judgment dismissing each of Steel Farms' claims. Steel Farms moved for reconsideration. The court granted Steel Farms' motion for relief as to dismissal of Steel Farms' unjust enrichment and declaratory judgment claims on the grounds that they had improperly been dismissed due to clerical error. The court subsequently held that the Lease and Option's merger clause prevented introduction of parol evidence pertaining to whether the parties intended the irrigation equipment to be a fixture or personal property. Finding *Rayl v. Shull Enterprises, Inc.*, 108 Idaho 524, 700 P.2d 567 (1984) controlling, the court held that, as a matter of law, the irrigation equipment was a fixture. Finally, the court held that issues of fact remained as to whether Croft & Reed's retention of the irrigation equipment constituted unjust enrichment.

---

[1] The district court held that there were disputed issues of fact as to whether the Lease and Option's express four-year term was a mutual mistake, and concluded that summary judgment was therefore inappropriate as to that issue. Less than two weeks later, the district court nonetheless entered judgment dismissing all but Steel Farms' unjust enrichment and declaratory judgment claims with prejudice. Thus, although the district court originally ruled a question of fact remained as to Steel Farms' mutual mistake claim, its judgment granted summary judgment regarding that claim. On appeal, Steel Farms does not challenge this apparent inconsistency and we therefore do not address it here.

The court entered judgment as to the claims dismissed and certified the judgment as final pursuant to I.R.C.P. 54(b). Steel Farms appeals the certified judgment.

## II. STANDARD OF REVIEW

This Court reviews an order granting a motion for summary judgment[2] according to the same standard used by the district court in ruling on the motion. *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 69, 205 P.3d 1203, 1205 (2009). Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). We construe disputed facts and draw all reasonable inferences from the record in favor of the non-moving party. *Armstrong*, 147 Idaho at 69, 205 P.3d at 1205. Questions of law are reviewed de novo. *Id.*

## III. ANALYSIS

### A. The district court erred by granting summary judgment and dismissing Steel Farms' claim to enforce Option A.

Steel Farms raises several challenges to the district court's dismissal of its claim to enforce the option to purchase.

1. <u>The district court erred in holding that Steel Farms terminated the Lease and Option by contracting to grant Walker Land an option to purchase the Property.</u>

The district court held that Steel Farms breached the Lease and Option by granting Walker Land Option B, an option to purchase the Property, and that Steel Farms thereby terminated the Lease and Option. The Lease and Option states:

> <u>Assignment or Transfer Prohibited</u>. The Tenant shall not sell or contract to sell or assign or contract to assign or otherwise transfer or hypothecate or assign as security or pledge or otherwise encumber the Tenant's interest in the Option or the Premises or any part thereof separate from this lease without first obtaining the written consent of the Landlord. Any violation of the provisions of this paragraph by the Tenant shall forthwith and without notice terminate the Option to Purchase. . . .

However, we hold that the district court erred because Option B did not assign or convey any interest in Option A.

---

[2] The parties dispute the applicable standard of review. Steel Farms asserts that the issues on appeal are the legal conclusions reached by the trial court's grant of summary judgment, to be reviewed de novo. Croft & Reed asserts the standard of review is abuse of discretion because the issues on appeal arise from the trial court's denial of Steel Farms' motion for reconsideration. Since Steel Farms' appeal challenges the trial court's legal conclusions and does not challenge the denial of the motion for reconsideration, the summary judgment standard of review is appropriate.

This Court will enforce the language of a contract where that language is plain and unambiguous. *Pinehaven Planning Bd. v. Brooks*, 138 Idaho 826, 829, 70 P.3d 664, 667 (2003). In the present case, the bulk of the parties' briefing on this issue addresses whether the Lease and Option contains a non-assignment and/or forfeiture clause subject to strict construction. However, there is no need to determine the nature of, nor to strictly construe, the Lease and Option because its plain language does not restrict Steel Farms' ability to contract to sell its interest in the Property following Steel Farms' exercise of Option A. Rather, Steel Farms had two distinct interests under the plain language of the Lease and Option: (1) an interest in leasing the Property, and (2) an interest in exercising Option A to purchase the Property. The language of this provision restricts Steel Farms' ability to assign or transfer only these two interests; it neither addresses nor governs Steel Farms' ability to contract to alienate the Property after acquiring it through the exercise of Option A.

Under the terms of the Lease and Option, if Steel Farms exercises Option A, Croft & Reed is required to convey to Steel Farms marketable title by general warranty deed. In other words, if Steel Farms properly exercises the option (and makes the required payment), it will own the Property in fee simple, free from any restrictions imposed by Croft & Reed. The instrument granting Option B does not purport to transfer any interest that Steel Farms might have in Option A. Rather, the instrument provided that if Walker Land exercised Option B, it had the duty to pay the full purchase price to Steel Farms at "such time as [Steel Farms] shall own fee simple title to the Property." As Steel Farms did not assign or transfer to Walker Land an interest governed by the Lease and Option, the district court erred in holding that Steel Farms' interest in Option A terminated.

2. <u>The district court erred in holding that Virginia Mathews' initialed interlineation was insufficient to amend the Lease and Option.</u>

The district court held that Virginia Mathews' handwritten interlineation did not satisfy the Lease and Option's merger clause and therefore was insufficient to modify the lease term. Based on that holding, the court determined that whether Mathews possessed the authority to modify the Lease & Option as an agent of Croft & Reed was irrelevant.

This Court has long recognized that an instrument may be modified by handwritten interlineation. *E.g.*, *Bowman v. Bohney*, 36 Idaho 162, 165, 210 P. 135, 136 (1922). However, we have not addressed the effect of initialed interlineations when they are inscribed upon an

7

original agreement that contains a merger clause limiting effective acts of alteration to those that appear in a written instrument signed by all parties. The merger clause in the present case does just that, stating:

> Entire Agreement. This instrument, along with any exhibits and attachments hereto, constitutes the entire agreement between Landlord and Tenant relative to the Premises. This agreement and the exhibits and attachments may be altered, amended or revoked only by an instrument in writing signed by both Landlord and Tenant.

Thus, an amendment to the Lease and Option would only be effective if three conditions were satisfied: (1) the amendment was contained within an instrument, (2) the instrument was in writing, and (3) the instrument was signed by both Steel Farms and Croft & Reed. Since the initials of both Virginia Mathews and Kevin Steel appear alongside the handwritten interlineation here at issue, the latter two of these conditions are met. *See George W. Watkins Family v. Messenger*, 115 Idaho 386, 389, 766 P.2d 1267, 1270 (Ct. App. 1988) (holding inscription of a party's initials sufficient to satisfy the statute of frauds).

Thus the issue is whether an amendment must appear in an instrument physically separate from the original. We hold that it need not. An instrument is a "written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." *Black's Law Dictionary* 869 (9th ed. 2009). A handwritten interlineation inscribed upon an existing contract appears on a written instrument. Therefore, under the circumstances set forth by the merger clause to which the parties agreed, Mathews' interlineated amendment could be effective.

However, the issue of Mathews' agency authority remains unresolved. We therefore reverse the holding of the district court and remand for consideration whether Mathews possessed actual or apparent authority to modify the Lease and Option on behalf of Steel Farms.

3. <u>The district court erred as a matter of law by excluding parol evidence regarding the Lease and Option's intended duration.</u>

Steel Farms contends that the Lease and Option was ambiguous because the express lease term expired before Option A could be exercised and also because "lease term" was not defined to include "lease extension." The district court reasoned that:

> While the language in the Option as compared to the term of the Lease may appear nonsensical and a contradiction at first blush, the two provisions (the term of the Lease and the Option date) can be reconciled harmoniously, i.e., a precondition to exercising the Option was an extension or renewal of the Lease. . .

8

.  Accordingly, while the court considers this to be a close question, the court finds that the language is not ambiguous and therefore parol evidence is not admissible to resolve an alleged ambiguity.

We hold the Lease and Option is ambiguous and the district court therefore erred by excluding parol evidence of intent.  The plain language of a contract, if unambiguous, is controlling.  *Cont'l Nat'l Am. Group v. Allied Mut. Ins. Co.*, 95 Idaho 251, 253, 506 P.2d 478, 480 (1973).  A court must look to the contract as a whole and give effect to every part thereof. *Wright v. Village of Wilder*, 63 Idaho 122, 125, 117 P.2d 1002, 1003 (1941).  "For a contract term to be ambiguous, there must be at least two different reasonable interpretations of the term, or it must be nonsensical."  *Swanson v. Beco Const. Co.*, 145 Idaho 59, 62, 175 P.3d 748, 751 (2007) (*citing Armstrong v. Farmers Ins. Co. of Idaho*, 143 Idaho 135, 138, 139 P.3d 737, 740 (2006) and *Purdy v. Farmers Ins. Co. of Idaho*, 138 Idaho 443, 446-47, 65 P.3d 184, 187-88 (2003)).  "Parol evidence may be considered to aid a trial court in determining the intent of the drafter of a document if an ambiguity exists."  *In re Estate of Kirk*, 127 Idaho 817, 824, 907 P.2d 794, 801 (1995) (citing *Hall v. Hall*, 116 Idaho 483, 484, 777 P.2d 255, 256 (1989)).

According to the plain language of the Lease and Option, Steel Farms' lease term began April 22, 2004 and ended March 1, 2008.  In order to exercise Option A, Steel Farms was required to "give written notice thereof to [Croft & Reed] subsequent to the maturity of this option on July 15, 2008 and during the Term of this lease (including any agreed extension or exercised option term but excluding any holdover term)."  We note first that the district court's interpretation fails to give effect to every part of this provision, because it renders superfluous the words "during the Term of this lease (including . . . ."  Contrary to the district court's conclusion, the agreement's plain language suggests the parties did not intend to limit exercise of Option A to the period of an agreed lease extension, but rather to grant Steel Farms the ability to exercise the option during the initial lease term.

Further, the plain language of the Lease and Option regarding agreed lease extensions is nonsensical.  Although the district court held Steel Farms could only exercise Option A during an agreed extension of the lease, the Lease and Option states that if Steel Farms remained in possession of the Property after the lease term expired "*with or without the express or implied consent*" of Croft & Reed, Steel Farms' tenancy would become a month-to-month holdover tenancy. (Emphasis added).  No other provision describes the means by which the parties could agree to extend the lease.  Accordingly, even if Steel Farms obtained Croft & Reed's consent to

9

remain in possession of the Property, i.e., even if the parties agreed to extend the lease, Steel Farms would be a holdover tenant. Yet the Lease and Option expressly prohibited exercise of Option A during a holdover period. Thus, although the agreement purported to grant Steel Farms an option to purchase the Property, strict application of its plain language left Steel Farms with no opportunity to exercise the option. Since the plain language of the Lease and Option offers no means by which to resolve this nonsensical outcome, parol evidence is necessary to determine the parties' intent.

We also note that the district court's interpretation of the Lease and Option is contrary to law. "It is basic contract law that an option for which value is given constitutes an irrevocable offer by the optionor which continues for the period stated in the option, . . . and which creates a power of acceptance in the optionee." *Damiano v. Finney*, 93 Idaho 482, 485, 464 P.2d 522, 525 (1970). The district court's interpretation strays from this basic rule because it permits Croft & Reed the opportunity to refuse to extend the lease and thereby to revoke Steel Farms' option to purchase. The district court's interpretation thus impermissibly provides Croft & Reed with a means by which it may avoid longstanding contract law and its obligation to Steel Farms.

We therefore vacate the district court's judgment and remand with instructions to consider parol evidence regarding the intended lease term.

## B. The district court erred in its grant of summary judgment dismissing Steel Farms' claim that the irrigation equipment was not a fixture.

Steel Farms contends that the district court failed to properly apply the three-part test for determining whether irrigation equipment is personal property or a fixture.[3] The district court construed *Rayl v. Shull Enterprises, Inc.*, 108 Idaho 524, 700 P.2d 567 (1984) as holding that an entire irrigation system is a fixture as a matter of law, even though portions of it may be easily detached or moved. The court thus concluded that the irrigation equipment in the present case was a fixture. The court also held that the Lease and Option's merger clause operated to exclude parol evidence of the character of the irrigation equipment intended by the parties.

---

[3] Croft & Reed contends that Steel Farms' complaint admitted the disputed equipment was an improvement intended to remain with the Property and that the issue is therefore moot. However, Croft & Reed misconstrues the language of Steel Farms' complaint, which states that Steel Farms made "improvements and repairs to the ground well pre-existing on the property. In addition, [Steel Farms] also paid for and installed a new pump for the well, as well as purchasing two new pivot sprinklers for the purpose of irrigating the Property." Thus, Steel Farms did not characterize the purchased equipment as improvements and its character remains in dispute.

We hold that the plain language of the Lease and Option does not resolve the question of the irrigation equipment's character, and therefore the district court erred in excluding parol evidence regarding that matter. Where a written agreement is integrated, questions of the parties' intent regarding the subject matter of the agreement may only be resolved by reference to the agreement's language. *Valley Bank v. Christensen*, 119 Idaho 496, 498, 808 P.2d 415, 417 (1991). A written contact containing a merger clause is integrated for purposes of the parol evidence rule. *Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005). "[E]vidence of prior or contemporaneous oral agreements relating to the same subject matter is inadmissible to vary, contradict, or enlarge the terms of the written agreement." *Valley Bank*, 119 Idaho at 499, 808 P.2d at 418. However, parol evidence "is admissible to establish 'any fact that does not vary, alter, or contradict the terms of the instrument or the legal effect of the terms used.'" *Cannon v. Perry*, 144 Idaho 728, 731, 170 P.3d 393, 396 (2007) (quoting 29A Am.Jur.2d Evidence § 1106 (1994)).

In the present case, the nature of the irrigation equipment is not within the scope of the Lease and Option, and thus a question of fact remains as to whether the parties intended the equipment to be a fixture or personal property. The Lease and Option describes the Property as follows: "The Premises shall consist of the lands and improvements and fixtures on the property more fully described on Exhibit 'A' attached hereto." Exhibit A provides a metes and bounds legal description of the Property and does not mention the irrigation equipment or any other fixture. Rather, the exhibit merely describes the Property's perimeter. Other than the Lease and Option's general reference to "fixtures," the document simply does not mention the irrigation equipment. Because the Lease and Option does not expressly describe just what property the parties intended as fixtures, a question of fact remains regarding whether the parties intended the irrigation equipment to be a fixture or personal property, and we therefore remand with instructions to consider parol evidence in order to resolve that question.

We also provide guidance on remand regarding the proper application of *Rayl v. Shull Enterprises, Inc.*, 108 Idaho 524, 700 P.2d 567 (1984). The district court granted Croft & Reed's motion for summary judgment, reasoning that even though components of a pivot irrigation system may be easy to remove and transport, under *Rayl* an irrigation system is a fixture as a matter of law. However, an irrigation system as a whole is not necessarily a fixture. Whether property constitutes a fixture is normally a mixed question of law and fact. *Rayl*, 108 Idaho at

11

527, 700 P.2d at 570. "A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto for the purposes of trade, manufacture, ornament or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises." I.C. § 55-308.

> [I]n determining whether a particular article has become a trade fixture, three general tests are to be applied: (1) annexation to the realty, either actual or constructive; (2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold.

*Rayl*, 108 Idaho at 527, 700 P.2d at 570 (quoting *Pearson v. Harper*, 87 Idaho 245, 256, 392 P.2d 687, 693 (1964)). Of these three factors, whether the party installing the object had the intention to annex the object to the land at the time of installation, as objectively demonstrated by the circumstances surrounding the disputed item's installation, is the most significant. *Id.* at 528, 700 P.2d at 571 (citing *Beebe v. Pioneer Bank & Trust Co.*, 34 Idaho 385, 392, 201 P. 717, 719 (1921). The remaining two factors are intended to assist the fact finder in determining the parties' intent. *Boise-Payette Lumber Co. v. McCornick*, 32 Idaho 462, 468, 186 P. 252, 253 (1919). Adaptation exists if "the particular object is clearly adapted to the use to which the realty is devoted . . . ." *Rayl*, 108 Idaho at 528, 700 P.2d at 571. However, the fact that an item is adapted for and necessary to the use of a particular property does not necessitate a finding that the item is a fixture. *Boise-Payette Lumber Co.*, 32 Idaho at 468, 186 P. at 253.

The district court relied on *Rayl*, in which this Court concluded that, as a matter of law, one irrigation system taken as a whole was a fixture. 108 Idaho at 529, 700 P.2d at 572. That irrigation system consisted of wells and pipes "bolted to cement slabs buried in the ground, and attached to pipes and electrical wires which were buried three to four feet underground. Removal of the system necessitated digging up these buried wires and pipes, which could only result in some damage to the realty itself." *Id.* This Court held that the intention to permanently attach the irrigation system to the land was demonstrated by the manner in which the system was installed, the fact that the system was adapted to the particular ground being farmed, and the destruction of the preexisting irrigation system.

In the present case, the district court appears to have concluded, based on our statement in *Rayl* that "[i]rrigation is peculiarly necessary to a farming operation conducted in Idaho," that

12

any equipment that makes up part of a farmland irrigation system must be a fixture. However, our holding in *Rayl* was narrowly tailored to the unique facts of that case and does not mandate that irrigation equipment must always, as a matter of law, be a fixture. In other cases, the Court has affirmed the separate assessment of component parts of irrigation systems to determine whether each part is a fixture or personal property. *E.g.*, *Duff v. Draper*, 98 Idaho 379, 382, 565 P.2d 572, 575 (1977) (above-ground, moveable components of irrigation system were not fixtures, even though they were bolted to a concrete foundation embedded in the ground); *Rowan v. Riley*, 139 Idaho 49, 53, 72 P.3d 889, 893 (2003) (separately considering well, well casings, mainline, and pump and finding some components to be fixtures and others personal property).

Although this Court in *Rayl* concluded the entire irrigation system was a fixture, we also reiterated the requirement that courts assess objective intent, annexation, and adaptation to determine intent. 108 Idaho at 527, 700 P.2d at 570. To hold that *Rayl* mandates as a matter of law that all irrigation systems are fixtures would undermine the role of courts in assessing intent and, where the disputed property is irrigation equipment, would improperly convert what has previously been characterized as a mixed question of law and fact into a pure issue of law. We confirm that it is the duty of trial courts to determine and give effect to property's intended character, and hold that the district court's application of *Rayl* was therefore in error.

**C. After entry of judgment resolving each of the claims in this case, the district court shall determine which party has prevailed and whether that party is entitled to attorney fees pursuant to I.C. § 12-120, I.C. § 12-121, and the Lease and Option.**

Steel Farms requests attorney fees on appeal pursuant to the Lease and Option and I.C. § 12-120(3). Croft & Reed also requests attorney fees pursuant to those authorities, as well as I.C. § 12-121. However, this appeal arises from an I.R.C.P. 54(b) certified judgment which resolved some, but not all, of the parties' claims. Since each claim in an action must be resolved before a court may determine the prevailing party, the identity of the prevailing party in this case will not be known until proceedings at the trial level are complete. I.R.C.P. 54(d)(1); *Bagley v. Thomason*, 149 Idaho 799, 804-05, 241 P.3d 972, 977-78 (2010) (citing *MBNA Am. Bank, N.A. v. Fouché*, 146 Idaho 1, 4, 189 P.3d 463, 466 (2008)). Upon the district court's entry of a final judgment deciding each claim below, the court is to determine which party has prevailed and whether that party is entitled to attorney fees related to this appeal.

## IV. CONCLUSION

We vacate the I.R.C.P. 54(b) judgment, reverse the grant of partial summary judgment, and remand to the district court for proceedings consistent with this opinion. Costs to Steel Farms.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.